Original
No. 7259
Carroll
No. 7504

JANET M. DODIER

v.

STATE OF NEW HAMPSHIRE DEPARTMENT OF LABOR & a.
SAME

v.

DAVIDSON RUBBER COMPANY, INC. & a.

April 29, 1977

*James J. Kalled,* of Wolfeboro, by brief and orally, for the plaintiff.

*David H. Souter,* attorney general, waived brief and oral argument.

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*Theodore Wadleigh* orally), for defendants Davidson Rubber Company, Inc., and Travelers Insurance Company.

LAMPRON, J.   The main issue to be decided is whether under RSA 281:26 XVI, in effect at the time of plaintiff's injury in an industrial accident on August 29, 1968, she was entitled to an additional healing period of 117 weeks for the loss of 97% vision in her left eye which is to be compensated as the loss of an eye. *Id.* XXI. The deputy labor commissioner denied plaintiff's petition therefor and she appealed to the superior court. As RSA 281:26-a III provided that any such dispute "shall be determined by the labor commissioner on the basis of competent medical evidence and said findings shall be final", the Trial Court (*Batchelder, J.*) ruled that it had no jurisdiction over the issue. Plaintiff then pro-

ceeded in this court by a petition for a writ of certiorari under an agreed statement of facts by the parties.

As no appeal from the decision of the commissioner was provided by RSA ch. 281, the trial court properly dismissed plaintiff's appeal for lack of jurisdiction. *See In re Belgrade Shores, Inc.*, 359 A.2d 59, 61 (Me. 1976). Certiorari is therefore a proper remedy. *Tasker v. N.H. Personnel Comm'n*, 115 N.H. 204, 206, 338 A.2d 543, 544 (1975). "However, our opinions have consistently pointed out that on certiorari it is not open to this court to make de novo findings or to revise those made by the commission. The only question before us is whether the . . . [commissioner] has acted illegally in respect to jurisdiction, authority or observance of the law, thereby arriving at a conclusion which could not legally or reasonably be made." *Id.* Because the deputy labor commissioner made his determination in this case on the basis of an incorrect interpretation of the applicable law, his decision must be reversed.

Plaintiff was employed as an assembly line worker by defendant Davidson. On August 29, 1968, a steel bristle flew from a rotary wire brush being operated eight or nine feet from her and penetrated plaintiff's left eyeball. The resulting injury was initially diagnosed by Dr. Goodall as a "[p]erforating wound of the left cornea with apparent perforation of the interior lens capsule . . . with traumatic cataract and secondary glaucoma." Plaintiff underwent four operations on her left eye on August 31, 1968, September 4, 1968, January 3, 1969, and on January 14, 1969.

The parties agree that plaintiff was paid temporary total disability from August 29, 1968, to January 29, 1969, a period of 22 weeks. From January 30, 1969, to April 21, 1969, a period of 12 weeks, plaintiff received no compensation either temporary total or permanent partial. Commencing April 21, 1969, to September 13, 1971, a period of 126 weeks, plaintiff received the scheduled permanent partial disability payments for the loss of an eye. RSA 281:26 XVI.

On January 21, 1969, Dr. Goodall wrote a letter stating that he was to see the plaintiff on a follow-up visit after her fourth operation. "If all goes well I believe she could return to work not requiring perfect binocular vision and stereopsis as of January 28, 1969." The deputy commissioner found that plaintiff started part-time work at a snack bar in February 1969. "After that she worked at seasonal jobs as this was the only type of work available

in the area. Could have worked full time if available. Had no transportation to go to other areas. Did not return to work for Davidson Rubber as she thought fumes would bother her eye." Plaintiff admits the part-time work. She states in her brief that "her capabilities were limited in so far as her lack of binocular vision would tolerate; she was forced to take periodic breaks to apply eye drops to the injured eye; the eye was easily tired by the rapid movements required at her work."

The deputy commissioner decided as follows: "RSA 281:26-a Limitations. Provides that payments for permanent partial disability under section 26 . . . shall be paid weekly from date of determination of permanent partial disability. By letter dated April 12, 1969, Dr. Edwin B. Goodall established disability as 97% loss of vision in her left eye. Payments were started April 21, 1969, based upon this report. Therefore, it is determined that the claimant is not entitled to an additional healing period . . . ." The deputy commissioner thus considered the actual healing period to have ended as of the date when the degree of permanent loss of vision could be established.

However, it is uncontradicted that in a letter dated January 10, 1972, Dr. Goodall, who treated plaintiff, stated that "in the period between January 1969 and May 1, 1971 it was medically ill-advised for Mrs. Dodier to return to work at the Davidson Rubber Co. in an irritating atmosphere, that her left eye was more easily fatigued than normal by full time employment use, and that it would have been very difficult for her to work full time during this period." She continued to have intermittent aching pain and redness in the left eye which tended to get worse as the day went on. This required treatment with aspirin and soothing eye drops . . . . In October 1969, the tension in the left eye was found to be higher than normal on several occasions . . . pilocarpine drops were required four times a day in the left eye to keep the ocular tension normal." Dr. Goodall further stated in that letter that the status of the injured eye was stabilized by May 1, 1971.

On the basis of the above determination, which was uncontradicted, plaintiff argues that the actual healing period did not end on January 29, 1969, when her temporary total disability payments were discontinued but on May 1, 1971, the date of the stabilization of her eye. Plaintiff seeks additional healing benefits for that period of one hundred seventeen weeks.

■■ For purposes of workmen's compensation, "healing period" is defined as the period during which recovery or lasting improvement of the condition can reasonably be expected, *Corral v. McCrory Corp.*, 228 So. 2d 900, 903 (Fla. 1969). The healing period continues until the claimant's condition has become stationary, that is, when the claimant has recovered as far as the permanent nature of the injury permits. *Employers Mut. Liab. Ins. Co. v. Contreras*, 109 Ariz. 383, 509 P.2d 1030 (1973); *Redmond v. McMinn County*, 209 Tenn. 463, 354 S.W.2d 435 (1962); *Mednicoff v. Dep't. of Industry, Labor & Human Relations*, 54 Wis. 2d 7, 194 N.W.2d 670 (1972); 2 A. Larson, Workmen's Compensation Law § 57.10, at 10–6 (1976). Plaintiff's injury did not consist solely of lost vision, but included also secondary glaucoma, ocular inflammation, and increased sensitivity and fatigue. Therefore the healing period cannot be determined by the single factor of vision loss, but must be determined with respect to the injury as a whole. Although plaintiff may not have regained any vision after January 29, 1969, when her temporary total disability payments were discontinued, or April 12, 1969, when the extent of her vision loss was fixed, all the other aspects of her injury did continue to improve, under medical treatment, until her condition had stabilized on May 1, 1971. The fact that the extent of vision loss could be established sooner does not deprive plaintiff of benefits for the remainder of the healing period. *Phillips Petroleum Co. v. Alaska Ind. Bd.*, 17 Alaska 658, 665–66 (1958).

■■ Based on Dr. Goodall's undisputed assessment that the condition of plaintiff's eye did not stabilize until May 1, 1971, plaintiff should have been allowed additional healing period benefits from January 29, 1969, to May 1, 1971. This was a period of convalescence during which plaintiff continued to receive medical treatment and supervision, and during which her eye continued to improve. Her entitlement to these healing period benefits is not affected by the fact that she was able to engage in part-time work at a snack bar. *Phillips Petroleum Co. v. Alaska Ind. Bd.*, 17 Alaska 658, 667 (1958); *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 229 S.E.2d 325, 329 (1976); *United States Gypsum Co. v. Rauh*, 318 P.2d 864, 866 Okla. (1957); *see* 2A. Larson, *supra* § 57.10, at 10–4. It is not the extent of a claimant's disability which determines the healing period, but whether the process initiated by the injury has become stationary. *Johnson v. Industrial Commission*, 14 Wis. 2d 211, 218, 109 N.W.2d 666, 670 (1961). Under the

statutory provisions in effect at the time, the actual healing period for plaintiff's injury was to be determined "on the basis of competent medical evidence." RSA 281:26-a III. For purposes of determining the healing period, no reference is made to whether a claimant has worked, or has been able to work. RSA 281:26 in effect at that time provided that an injured worker was to receive for the loss of an eye both the scheduled permanent partial disability benefits of 126 weeks, plus the actual healing period benefits. *See Redmond v. McMinn County*, 209 Tenn. 463, 468–69, 354 S.W.2d 435, 437–38 (1962).

As a matter of law the deputy labor commissioner erred by determining the end of plaintiff's healing period on the basis of the point in time when the degree of vision loss could be established. There being undisputed competent medical evidence that the condition of plaintiff's eye did not stabilize until May 1, 1971, plaintiff was entitled to actual healing period benefits up to that date. The deputy labor commissioner's denial of the additional one hundred seventeen weeks of healing period benefits is therefore reversed, as his decision was erroneous as a matter of law. An order in accordance with this opinion should be entered by the commissioner of labor and the case is remanded to him for that purpose. We express no opinion on this issue under the act as presently amended.

*Remanded.*

BOIS and DOUGLAS, JJ., did not sit; the others concurred.