314 S.E.2d 401

**Richard P. ALLEN**

v.

**WORKERS' COMPENSATION COMMIS-SIONER AND CONSOLIDATION COAL CO.**

**No. 16047.**

Supreme Court of Appeals of West Virginia.

March 2, 1984.

Dissenting Opinion March 9, 1984.

Riley & Broadwater, Wheeling, for appellant.

Phillips, Gardill, Hazlett & Kaiser, Wheeling, for appellee.

HARSHBARGER, Justice:

Richard P. Allen appeals from an order of the Workers' Compensation Appeal Board that granted Consolidation Coal Company's application for modification of his temporary total disability benefits. We are asked to decide whether the procedure employed by the Workers' Compensation Commissioner and Appeal Board gave Allen due process.

Allen worked in coal mines for ten years. On June 13, 1980, he hurt his back lifting a steel bar, but continued working. On June 16 when he told his supervisor about his injury, he was taken to a hospital, examined, and released that day. His claim was held compensable on a no lost time basis.

He reinjured his back on March 21, 1981 and petitioned to reopen his claim, and was granted TTD benefits from March through August 26, 1981, when his claim was cancelled for lack of medical evidence. He then went to Dr. Loar for treatment and petitioned again in March, 1982 to reopen his claim. Based on Dr. Loar's November 10, 1981 report, the Commissioner reopened his claim and by a June 23, 1982 order awarded TTD benefits from November 10, 1981 through April 26, 1982.

The employer protested, and also filed an application for modification, pursuant to W.Va.Code, 23–5–1c,[1] that the Commissioner denied for failure to establish just cause on July 22, 1982. Claimant did not receive a copy of the application for modification nor any of the supporting documents. (Code, 23–5–1c does not provide for notice to a claimant unless the commissioner finds cause for adjustment.)

Consolidation appealed the Commissioner's denial of its application to modify TTD benefits to the Appeal Board, W.Va.Code, 23–5–1d,[2] producing evidence that included a Pinkerton report to the effect that Allen had purchased a restaurant and was operating it on a full-time basis. This report had been provided to the Commissioner before her July 22 order, but had not been seen by Allen.

---

1. W.Va.Code, 23–5–1c:

"In any case wherein an employer makes application in writing for a modification of any award previously made to an employee of said employer, and such application discloses cause for a further adjustment thereof, the commissioner shall, after due notice to the employee, make such modifications or changes with respect to former findings or orders in such form as may be justified, and any party dissatisfied with any such modification or change so made by the commissioner, shall upon proper and timely objection, be entitled to a hearing as provided in section one [§ 23–5–1] of this article."

2. W.Va.Code, 23–5–1d:

"If in any such case it shall appear to the commissioner that such application fails to disclose some fact or facts which were not theretofore considered by the commissioner in his former findings, and which would entitle such employer to any modification of said previous award, the commissioner shall, within sixty days from the receipt of such application, notify the claimant and employer that such application fails to establish a just cause for modification of said award. Such notice shall be in writing and shall state the time allowed for appeal to the appeal board from such decision of the commissioner. The employer may, within thirty days after receipt of said notice, apply to the appeal board for a review of such decision."

While this appeal was pending before the Appeal Board, a September 20, 1982 hearing was held on the employer's protest to the reopening and award of additional TTD benefits. Consolidation, for the first time, alerted Allen that it was testing his right to TTD when it cross-examined him about his business. He and his wife testified that he was in the restaurant on a daily basis, that he did ordering, wrote checks and paid bills, did bookkeeping, hiring and firing, and occasionally served a cup of coffee to a customer. He did no manual labor, leaving that to the hired waitresses and his wife. He and his wife did not consider what he did "really working". The Pinkerton report was not produced or introduced.

But it and the September 20 hearing record were before the Appeal Board when it decided whether to reverse the Commissioner and permit the employer's application for modification. The Board was "of the opinion that the Pinkerton report filed in support of the employer's application for modification established a just cause for modification. The claimant did not offer any evidence to rebut the employer's contention that he was employed."

The Pinkerton report was an *ex parte* document filed by the employer and Allen argues it should not have been considered by the Board, it was hearsay, and he was never shown the report and did not have an opportunity to rebut it; and that the testimony from the protest hearing should not have been considered by the Board on the modification appeal, and that the procedure set out in *Mitchell v. State Workmen's Compensation Commissioner*, 163 W.Va. 107, 256 S.E.2d 1 (1979), was not followed.

■ It is true that the report and other documents supporting the employer's claim were hearsay, but that does not make them inadmissible. The Commissioner and the Appeal Board are not bound by the usual common-law rules of evidence. W.Va. Code, 23-1-15; *Vento v. State Compensation Commissioner*, 130 W.Va. 577, 44 S.E.2d 626, 630 (1947).

But Allen was not given notice or a chance to submit his own relevant evidence. The quandry created by these facts is that a worker against whom an application to modify TTD benefits has been filed with the Commissioner and who is not noticed of the application because the Commissioner finds no cause for modification, whereupon the employer appeals, may find himself before the Appeal Board defending the Commissioner's "no cause" decision, without having had an opportunity to test the employer's facts in a hearing.

In *Mitchell, supra,* we set out minimum due process standards for modification applications per Code, 23-5-1c:

W.Va.Code, 23-5-1c, permits an employer, upon an application containing credible evidence, to request the Commissioner to terminate temporary total disability benefits. Under this section, evidentiary hearings are not required to be held by the Commissioner until an order terminating the benefits is entered and timely objection to the order has been made. *However, procedural due process standards mandate that the Commissioner give the claimant advance notification of the reasons why his temporary total disability benefits are being considered for termination and a reasonable opportunity to supply relevant information on the issue,* except where the claimant has voluntarily returned to work. (Emphasis supplied.) Syllabus Point 3, *Mitchell v. State Workmen's Compensation Commissioner, supra.*

*Butcher v. State Workers' Compensation Commissioner,* 173 W.Va. 306 at 312, 315 S.E.2d 563 at p. 569 (1983) further explained *Mitchell:* "There is no right initially to an evidentiary hearing, but the Commissioner decides, based upon the information supplied by the parties and that contained in the file or through an independent medical examination, whether the temporary total disability benefits should be terminated." We have also explained that "where such information does not originate from the claimant or his physician, before the benefit may be terminated, reasonable notice must be given to the claimant of the proposed termination so that he may sup-

ply relevant information to show that the temporary total disability benefits are warranted." *Butcher, supra* 173 W.Va. at 311, 315 S.E.2d at p. 568.

■ *Butcher* did not create any new rules: it simply explained *Mitchell.* Allen's due process rights were denied when he was not notified about the modification application and its supporting documents.

Consolidation Coal finally argues that *Mitchell's* requirements were met, but even if this Court finds they were not, we should affirm the Appeal Board because *Mitchell* does not apply to this case. The final sentence in Syllabus Point 3 of *Mitchell, supra,* states that the procedural requirements must be met "except where the claimant has voluntarily returned to work." The company's position is that Allen voluntarily returned to work when he purchased and began helping operate his restaurant.

The employer has misread *Mitchell's* meaning. It has taken the "return to work" language of Syllabus Point 3 literally, and out of context. We explained in *Mitchell, supra* 163 W.Va. at 112, 256 S.E.2d, at 6, that temporary total disability is not defined in our statute, but it consists of the "healing" or "recovery" period.[3] *Accord, e.g., Don Ward and Company v. Henry,* Colo.App., 502 P.2d 429 (1972); Syllabus Point 1, *Crabtree v. Beech Aircraft Corp.,* 229 Kan. 440, 625 P.2d 453 (1981); *Dodier v. State Department of Labor,* 117 N.H. 315, 373 A.2d 341 (1977). We wrote in Syllabus Point 1 of *Mitchell* that two events trigger the termination of temporary total disability benefits: achieving a maximum degree of improvement or becoming medically certified to return to work. We recognized that those two events usually coincide in time, but there are times when a worker might never be certified to return to work, although he has reached his maximum level of improve-

ment. There also may be cases wherein claimants prematurely return to work, before the healing process is complete, and are compelled to stop working again because of their physical condition. Syllabus Point 1, *Dunlap v. State Workmen's Compensation Commissioner,* 160 W.Va. 58, 232 S.E.2d 343 (1977).

In *Dunlap,* we decided that TTD should not be terminated until the healing process is complete. But, as we said, in the usual and most common case termination will be predicated on either medical certification to return to work or medical certification that a claimant has reached his maximum degree of improvement. *See Fakourey v. Workmen's Compensation Commissioner,* 163 W.Va. 551, 258 S.E.2d 526 (1979). We have neither of those events in this case, yet this employer is seeking to terminate claimant's TTD benefits by a modification application.

*Mitchell* exempted from its procedural requirements claimants who voluntarily returned to work, but it did not define "returned to work". It must be remembered that the purpose of that language was to create an exception to cases in which due process requires notice and an opportunity to present relevant evidence prior to modification of TTD benefits; and was not intended to jeopardize the rights of any claimants but to simplify procedures.

■ Thus, a claimant who has returned to full-time employment at his former job with his former employer does not need notification that his employer seeks to modify his TTD benefits, because he is receiving his old salary from the same employer. It is that situation, and that situation only, for which the *Mitchell* exception to notice and opportunity to present evidence in modification applications was written.

■ In all other cases wherein an employer tries to modify claimant's TTD bene-

---

**3.** W.Va.Code, 23–4–6(n) defines total disability: "A disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time shall be considered in determining the issue of total disability."

*Accord, Meadows v. Lewis,* 172 W.Va. 457, 307 S.E.2d 625, 644 (1983); *Linville v. State Workmen's Compensation Commissioner,* 160 W.Va. 549, 236 S.E.2d 41 (1977); *Posey v. State Workmen's Compensation Commissioner,* 157 W.Va. 285, 201 S.E.2d 102 (1973).

fits because he has returned to work, a claimant is entitled to notice and to present his own evidence. It may be that the claimant is not working, is working part-time, or is only doing light work not comparable to his former employment. A claimant who seeks alternative employment during his healing period before he is medically certified to return to work or has reached his maximum level of improvement, should not be penalized. He is eligible for temporary total disability during his whole healing period whether or not he attempts interim employment.[4] His diligence and perseverance to remain in the working market should not revoke his minimum due process rights in TTD modification proceedings. We recognized in Footnote 3, *supra*, that Code, 23–4–6(n) defines total disability as that which prevents an employee from engaging in *substantial* gainful activity requiring skills or activities comparable to those of his previous gainful employment. Temporary total disability would therefore be inability to return to substantial gainful employment requiring skills or activities comparable to those of one's previous gainful employment during the healing or recovery period after injury. *Accord, State ex rel. Ramirez v. Industrial Commission*, 23 Ohio Op.3d 518, 69 Ohio St.2d 630, 433 N.E.2d 586 (1982); *White v. Woolery Stone Co.*, 181 Ind.App. 532, 396 N.E.2d 137, 139 (1979). A claimant's status in that regard may require the Commissioner's decision whenever a claimant "returns to work" in a different job from the one he had, a decision that should *not* be based on unilateral submissions by the employer. We emphasize that our prior holding in *Mitchell* was that TTD is delimited by the end of the "healing" period and not by a claimant's attempt to earn money while he is still disabled.

When there is a question about whether a claimant has returned to work, *Mitchell*'s requirements cannot be sidestepped. The *Mitchell* exception is for the clear cut case where the claimant has returned to full-time work at his same job for the same employer.

■ Due process requires that a claimant whose TTD benefits are put in jeopardy by an employer's application to modify, must have notification of the application and of the factual basis therefor. The claimant is thus enabled to make an informed choice about whether to introduce evidence to the Commissioner on any aspect of the application.

■ The appropriate remedy for a reversible due process procedural defect in administrative proceedings is remand to the appropriate tribunal with directions to remedy the defect. Syllabus Point 4, *Clarke v. West Virginia Board of Regents*, 166 W.Va. 702, 279 S.E.2d 169 (1981), *appeal after remand*, 171 W.Va. 662, 301 S.E.2d 618.

Reversed and remanded.

NEELY, Justice dissenting:

I have already noted my disagreement with this Court's efforts to "clarify" its opinion in *Mitchell v. State Workmen's*

---

4. *Accord, Speigner v. McGhee*, 55 Ala.App. 384, 316 So.2d 215 (1975), *cert. denied*, 294 Ala. 769, 316 So.2d 221; *Pyles v. Triple F. Feeds of Texas, Inc.*, 270 Ark. 729, 606 S.W.2d 146 (1980), *modified, Arkansas State Highway and Transportation Dept. v. Breshears*, 272 Ark. 244, 613 S.W.2d 391 (1981) (wherein the court distinguished between temporary total and temporary partial disability during healing period); *Don Ward and Company v. Henry*, Colo.App., 502 P.2d 429, 431 (1972); *Zenith Co. v. Industrial Commission*, 62 Ill.Dec. 940, 91 Ill.2d 278, 437 N.E.2d 628 (1982); *Keystone Steel & Wire Co.*, 52 Ill.Dec. 55, 85 Ill.2d 178, 421 N.E.2d 918 (1981); *J.M. Jones Co. v. Industrial Commission*, 17 Ill.Dec. 22, 71 Ill.2d 368, 375 N.E.2d 1306 (1978); *Lucas v. Insurance Co. of North America*, 342 So.2d 591 (La.1977), *reh. denied; St. Cyr v. Industrial Met-* als of the South, 341 So.2d 643 (La.App.1977); *Dodier v. State Department of Labor*, 117 N.H. 315, 373 A.2d 341 (1977); *Salazar v. Kaiser Steel Corp.*, 85 N.M. 254, 511 P.2d 580 (1973), *cert. denied*, 85 N.M. 229, 511 P.2d 555. *Cf., New York Indemnity Co. v. Industrial Commission*, 86 Colo. 364, 281 P. 740 (1929) (permanent total disability); *Leo v. American Hoist & Derrick Co.*, 438 A.2d 917 (Me.1981) (benefits may not be suspended simply because claimant has assumed another lower paying position unless it is determined that employment was voluntary choice and not due to continued incapacity to resume former position). *See generally*, 2 A. Larson, *Workmen's Compensation Law* § 57.12. *Contra, McDonnell Douglas v. Holliday*, 397 So.2d 366 (Fla.Dist.Ct.App.1981) and other Florida cases.

*Compensation Commissioner,* 163 W.Va. 107, 256 S.E.2d 1 (1979) in my dissent to *Butcher v. State Workers' Compensation Commissioner,* 173 W.Va. 306, 315 S.E.2d 563 (1984). Since the majority in today's case continues jauntily down that same primrose path, I can to a large extent content myself by referring to that dissent. There are, however, two points that I would like to underscore.

It is a somewhat seductive notion that if some due process is a good thing, more due process is a wonder to behold. However, it would be useful to remember that any process, due or not, carries with it additional expense. Because the fundamental principle underlying the entire workers' compensation scheme is that more money will actually reach the hands of injured workers if procedures are simplified, I am afraid I do not share the majority's enthusiasm for grafting layer upon layer of procedural requirements onto what was meant to be a simple process.

Secondly, I would point out once again that to the extent additional notice requirements are imposed, it is necessary that they be mutual. If employers must notify claimants of their intention to seek modifications, claimants must also notify employers of their intention to seek extension of temporary benefits. When one is dealing with a mammoth bureaucracy, there is no such thing as a minor adjustment.

My disagreement with the majority is less one of principle than it is one of emphasis. Procedural requirements can be both necessary and important, but when those safeguards cease to protect a claimant's right to benefits and begin to siphon off a significant portion of the funds from which benefits are to be awarded, we have gone too far. I dissent.