# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Billy Johnson,**
**Claimant Below, Petitioner**

**v. No. 24-516 and 24-517**    (JCN: 2023009705)
                                (ICA: NOS. 24-ICA-37 and 24-ICA-50)

**Blackhawk Mining,**
**Employer Below, Respondent**

**FILED**

**February 18, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Billy Johnson appeals the July 1, 2024, memorandum decision of the Intermediate Court of Appeals (ICA),[1] wherein the ICA affirmed two decisions of the West Virginia Workers' Compensation Board of Review (Board of Review): (1) a December 27, 2023, decision affirming a claim administrator order holding petitioner's claim compensable for low back sprain and granting no temporary total disability (TTD) benefits, and (2) a January 4, 2024, decision affirming a subsequent claim administrator order denying petitioner's request to reopen the claim for TTD benefits.

In separate appeals of the ICA decision to this Court, petitioner asserts that the medical evidence presented was sufficient to (1) add cervical strain as a compensable condition to his claim (Appeal No. 24-516), and (2) support an award of TTD benefits for petitioner's compensable lumbar injury from the date of injury to at least July 31, 2023, the date Dr. Prasadarao Mukkamala, M.D., performed an independent medical examination (IME) of petitioner and opined that petitioner had reached his maximum degree of improvement with regard to the compensable lumbar injury (Appeal No. 24-517). We consolidated these appeals for purposes of oral argument, consideration, and decision.

Upon our review, we determine that a memorandum decision affirming the ICA's decision is appropriate. *See* W. Va. R. App. P. 21.[2]

On June 28, 2022, petitioner was employed by the respondent as a rock truck driver. While

---

[1] *See Johnson v. Blackhawk Mining*, No. 24-ICA-37 and 24-ICA-50, 2024 WL 3251892 (W. Va. Ct. App. July 1, 2024) (memorandum decision).

[2] Petitioner is represented by John H. Skaggs, Esquire. Respondent is represented by Jeffrey B. Brannon, Esquire.

driving a truck in the course of his employment with respondent, petitioner was injured when he raised up the truck bed to unload 300 tons of rock and the truck rolled backward and down a forty-foot embankment. Petitioner was transported by ambulance to the emergency department at Charleston Area Medical Center (CAMC) where he reported feeling "'his back pop,'" "significant pain in his middle back down his spine," and "occasional tingling in his legs."[3] Petitioner "[d]enie[d] any other injuries." The emergency department final report noted that "X-rays are negative. Patient is not in acute distress at this time. Patient had muscular tenderness on the left lumbar musculature." Petitioner was discharged without restriction.[4]

On the Employees' and Physicians' Report of Occupational Injury or Disease form that was completed on the date of the accident, petitioner's attending physician at CAMC noted that petitioner sustained a "low back" occupational injury and that the injury did not aggravate a prior injury or disease. The question on the form as to whether petitioner was "advised . . . to remain off work 4 or more days" was left blank, as was the "Date Patient May Return to Work." Respondent completed a 24 Hr. Incident Investigation Report, describing the accident and noting that petitioner "stated he had discomfort in his lower back and was jarred in the cab. . . . [Petitioner] was released from CAMC General to return to his next scheduled shift."

Petitioner reported to the worksite to work his next scheduled shift.[5] However, he was suspended pending an investigation into the accident. On June 30, 2022, he was terminated from his employment for substandard performance.[6]

The medical evidence of record shows that, beginning in 2015 and through June 20, 2022, petitioner was seen extensively by various medical providers at Hill Chiropractic Center, Logan Regional Medical Center, and Family Healthcare Associates, for complaints of, among other things, lumbar pain and discomfort and cervical pain.

On June 29, 2022, one day after the accident and during his suspension from work, petitioner was seen by Leah Smith, APRN-CNP, at Family Healthcare Associates, where he reiterated that he "felt a pop in the middle of his back" while dumping the load from his truck the

---

[3] Petitioner was unrestrained but not ejected from the truck.

[4] An MRI of the lumbar spine was ordered but not performed until August 26, 2022. It showed "[m]oderate narrowing right neural foramina and mild narrowing left neural foramina at the L5-S1 level" and "[n]o spinal stenosis."

[5] Petitioner's regular shift was 5:00 p.m. to 3:00 a.m. He was injured at the end of his shift on June 28, 2022. He reported to work his next shift, which was to begin at 5:00 p.m. that same day.

[6] According to respondent, petitioner was hired on May 23, 2022. He was involved in two serious work truck accidents during his one-month-long tenure, accidents causing significant property damage to two different rock trucks due to "inattentiveness" and having the potential to cause significant injury to himself and others.

previous day. The physical examination revealed spinal tenderness at the thoracic and lumbar spine with muscle spasticity. Petitioner also "report[ed] trouble with bowels, numbness and tingling in BLE." Ms. Smith assessed petitioner with lower back sprain and encopresis.

During follow-up medical examinations with Ms. Smith on July 7, 2022, and August 1, 2022, it was noted that petitioner complained of "pain in mid back and lower back radiating into neck and lower extremities." Ms. Smith again assessed petitioner with lower back sprain. Petitioner was also seen at Family Healthcare Associates by C. Dale Cook, PA C, on July 15, 2022, and August 29, 2022, with similar complaints. Mr. Cook's assessment was lower back sprain. Further, Mr. Cook's reports specifically noted under "Review of Systems" that petitioner had "[n]o neck pain."[7] The August 29th report stated, "no work for 4 weeks."

By order entered August 29, 2022, the claim administrator approved petitioner's claim for "sprain to low back" and determined that "[b]ased upon our information, you have returned to work and are not entitled to wage loss benefits at this time." Petitioner protested this order, requesting the addition of "neck, both lower extremities, hands, and bowel" as compensable conditions, and an award of TTD benefits.

Petitioner returned to Mr. Cook for a follow-up visit on October 24, 2022. Like previous reports, it was noted that petitioner complained of "pain in mid back and lower back radiating into neck and lower extremities." Under "Review of Systems," it was specifically noted that petitioner had "[n]o neck pain."

On November 4, 2022, Mr. Cook completed an Attending Physician Benefits Form reporting that petitioner "has not returned to work. He continues to be off work since injury" and noting petitioner's estimated period of disability to be from "6/28/22 to present." Mr. Cook also indicated that petitioner was not at maximum medical improvement and was ready for a permanent partial disability rating. The form was forwarded to the third-party administrator.

On January 6, 2023, petitioner submitted answers to interrogatories identifying injuries to his "Neck – C1 & C3" and "Back – L5 & S1" resulting from the workplace accident and the healthcare providers and facilities where he received treatment related thereto.

Petitioner testified in a deposition on February 15, 2023, that, because of the workplace accident, he "messed up C-1, C-3 in my neck. . . . [and] L-5 and S-1 in my back." Petitioner testified that Mr. Cook referred him to physical therapy, that thrice weekly treatments and medication have not helped him, and that he receives steroid shots in his back every three to four weeks. Petitioner testified that he has "sharp pains down the middle of my neck down to my back, and also, it really hurts. It is different from before [the accident]. . . . Now, it is worse." According to petitioner, prior to this workplace accident, he had never missed work due to health problems. Petitioner has not worked since the accident.

---

[7] The reports authored by Ms. Smith and Ms. Cook were approved by Dr. Samuel A. Muscari, Jr., D.O.

Mr. Cook completed another Attending Physician Benefits Form on March 13, 2023, that again noted that petitioner's estimated period of disability was from "6/28/22 to present." Mr. Cook also indicated that petitioner was not at maximum medical improvement and was ready for a permanent partial disability rating. The form was forwarded to the third-party administrator.

While his protest to the August 29, 2023, order was pending, petitioner requested a reopening of the TTD benefits claim.

By order entered March 31, 2023, the claim administrator denied petitioner's request for a reopening of the claim for TTD benefits[8] on the ground that there was no medical evidence that petitioner sustained an aggravation or progression of his compensable condition.[9] Petitioner protested this order.

On July 31, 2023, Dr. Mukkamala performed an IME of petitioner. Dr. Mukkamala reported that petitioner "complained of neck pain and pain in the low back." Based upon his examination of petitioner and consideration of petitioner's extensive medical history, Dr. Mukkamala diagnosed petitioner with "lumbar sprain/strain" and concluded that his "compensable injury is lumbar sprain/strain."[10] Dr. Mukkamala opined that petitioner had reached maximum degree of improvement from the compensable low back injury. As stated in his report, Dr. Mukkamala determined that petitioner had an 8% whole person impairment resulting from "pre-existing back pain, the pre-existing noncompensable degenerative spondyloarthropathy as well as

---

[8] By separate order entered June 6, 2023, the claim administrator denied petitioner's request for payment for medical treatment received on May 17, 2023, because the treatment was neither medically necessary nor reasonably required to treat the compensable condition of petitioner's claim. Petitioner protested this order, which order the Board of Review ultimately affirmed. The Board of Review's ruling in this regard was not appealed to the ICA and is not at issue in the present appeal to this Court.

[9] The March 31, 2023, order denying petitioner's request to reopen the claim for TTD benefits indicated that the request to reopen was submitted on February 27, 2023. The request was not made a part of the appendix record before this Court.

[10] In his IME report, Dr. Mukkamala referenced, with specificity, numerous medical records from Logan Regional Medical Center (from July 7, 2018 to July 29, 2022); Hill Chiropractic Center (from August 24, 2015 to October 10, 2022); and Family Healthcare Associates (from July 7, 2014 to February 14, 2023), which, among other things, documented petitioner's history of neck and back pain both before and after the workplace accident. Among the medical records Dr. Mukkamala reviewed was a report from Robert Austen, D.O. at Logan Regional Medical Center who examined petitioner in the emergency department the day after the workplace accident. As recounted in the IME report, Dr. Austen reported that "[e]xamination of the neck revealed full range of motion without nuchal rigidity or vertebral point tenderness."

4

the compensable incident of 6/28/22."[11] As Dr. Mukkamala explained,

> [T]his claimant has had back pain with several visits to the medical personnel starting in 2014. Please note that even on the day before this particular injury of 6/28/22 meaning 6/27/2022 he presented to Leah Smith, the nurse practitioner with complaints of back pain. They referred the claimant to physical therapy at that time. That was only one day prior to the compensable injury of 6/28/22.[12]
>
> Therefore, I will apportion impairment and allocate 4% to pre-existing noncompensable back pain with degenerative spondyloarthropathy and 4% to the compensable injury of 6/28/22.[13]

(Footnotes added).

In a deposition taken on August 31, 2023, petitioner testified that he returned to work the evening of the accident but respondent "just told me to go home." When specifically asked whether he was "ready, willing, and able to work [his] shift" that day, petitioner answered in the affirmative.

By order entered December 27, 2023, the Board of Review affirmed the August 29, 2023, claim administrator order holding the claim compensable for low back sprain and granting petitioner no TTD benefits. As to compensability, the Board of Review found that

> the only medical opinion on record regarding causality is from Dr. Mukkamala. Per his report dated July 31, 2023, he only opined that lumbar sprain/strain resulted from the compensable injury. Dr. Mukkamala's opinion is unrefuted. There is no medical opinion on record that the conditions/components requested by the claimant are causally related to the compensable event of June 28, 2022. The claim administrator was not in error in holding sprain to the low back as the only compensable condition of the claim.

In affirming the denial of TTD benefits, the Board of Review found that

---

[11] Contrary to petitioner's deposition testimony that, prior to sustaining his compensable lumbar injury, he had never missed work due to health problems, Dr. Mukkamala noted in his report, regarding petitioner's history of back pain, that petitioner "stated that sometimes he missed work 2 or 3 times[,] a day or 2 on account of the previous back pain."

[12] In the IME report, Dr. Mukkamala referenced Ms. Smith's June 27, 2022, examination of petitioner, at which petitioner reported his "[c]hief complaint" as "[b]ack pain" in the "lumbar region."

[13] According to petitioner, he received a 4% permanent partial disability award, which award is not at issue in this appeal.

The claimant submitted an Attending Physician Benefits Form indicating that he was TTD from June 28, 2022, through March 13, 2023. However, the claimant testified that he returned to work on June 29, 2022, and was ready, willing, and able to work his shift that day. He did not work his shift because he was sent home by the employer and two days later was terminated from his employment with cause. The evidence establishes that the claimant could return to work but has not returned to work due to causes other than his compensable lumbar sprain injury. The claim administrator was not in error in denying TTD benefits.

The Board of Review thus concluded that "[t]he claimant has not established that the neck, both lower extremities, hands, and bowel are causally related to the compensable injury" or that "he is TTD due to the compensable injury of lumbar sprain."

In a subsequent order entered January 4, 2024, the Board of Review affirmed the March 31, 2023, claim administrator order denying petitioner's request to reopen the claim for TTD benefits. The Board of Review observed that "[n]o reopening request . . . is of record" and concluded that "[t]he evidence fails to establish an aggravation or progression of the compensable injury or facts not previously considered which would entitle the claimant to . . . TTD benefits."[14]

Petitioner appealed both the December 27, 2023, and January 4, 2024, orders to the ICA, and the ICA affirmed. Petitioner now appeals.

On appeal, we review questions of law de novo and accord deference to the findings of fact made by the Board of Review unless the findings are clearly wrong. *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

We first consider petitioner's argument that the Board of Review erred in concluding that petitioner failed to establish that he sustained a cervical strain as a result of the June 28, 2022, workplace accident.[15] Petitioner argues that there was sufficient evidence of cervical strain as a compensable condition in this case, including his deposition testimony and interrogatory answers identifying injury to his "[n]eck – C1 & C3" as "new"; medical records dated August 29, 2022, and October 24, 2022, indicating that petitioner was complaining of "pain in mid back and lower back radiating into neck and lower extremities;" and medical records of petitioner's treatment at Hill Chiropractic Center for, among other things, back and neck pain after the June 28, 2022, accident. We find no error.

---

[14] The Board of Review also set forth additional reasons for affirming the claim administrator order denying the reopening request that we need not address herein, and we affirm solely on the grounds stated in this decision.

[15] The Board of Review denied petitioner's request to add "neck, both lower extremities, hands, and bowel" as compensable conditions. In the present appeal, petitioner argues only that the Board of Review erred in denying the addition of cervical strain as a compensable condition.

Under West Virginia law, for an injury to be compensable it must be "(1) a personal injury (2) received in the course of employment [a]nd (3) resulting from that employment." Syl. Pt. 1, in part, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). The claimant has the burden of proving the elements of his or her workers' compensation claim. *See* Syl. Pt. 2, in part, *Sowder v. State Workmen's Comp. Comm'r*, 155 W. Va. 889, 189 S.E.2d 674 (1972).

The Board of Review correctly concluded that the record fails to support cervical strain as a compensable condition in this case. Medical records from CAMC, Logan Regional Medical Center, and Family Healthcare Associates documenting petitioner's injury immediately following the accident and examinations of petitioner in the days and weeks thereafter consistently diagnosed petitioner with only lower back sprain resulting from the workplace accident. Although petitioner relies on evaluations from follow-up visits on August 29, 2022, and October 24, 2022, where he complained of pain in his back radiating into his neck as proof that he sustained a cervical injury as a result of the workplace accident, the records from those visits specifically documented that petitioner had "no neck pain."[16] Further, based upon his examination of petitioner and consideration of petitioner's extensive medical history, Dr. Mukkamala found petitioner's compensable condition to be limited to lumbar sprain/strain. "In order to establish compensability an employee who suffers a disability in the course of his employment must show by competent evidence that there was a causal connection between such disability and his employment." Syl. Pt. 3, *Deverick v. State Comp. Dir.*, 150 W. Va. 145, 144 S.E.2d 498 (1965). Simply put, notwithstanding petitioner's testimony and interrogatory answers to the contrary, the medical evidence of record does not causally connect petitioner's purported cervical injury to the workplace accident. Accordingly, we find no error in the Board of Review's decision affirming the claim administrator order holding petitioner's claim compensable for lumbar sprain.

Next, we consider whether the Board of Review erred in affirming the claim administrator order denying petitioner an award of TTD benefits. Petitioner argues that he has not worked since the date of injury and is entitled to TTD benefits from that date until July 31, 2023, the date Dr. Mukkamala opined that he had reached his maximum degree of improvement regarding the compensable lumbar injury.

"Temporary total disability is an inability to return to substantial gainful employment requiring skills or activities comparable to those of one's previous gainful employment during the healing or recovery period after injury." Syl. Pt. 1, *Allen v. Workers' Comp. Comm'r,* 173 W.Va. 238, 314 S.E.2d 401 (1984).[17] Pursuant to West Virginia Code § 23-4-7a(e), TTD benefits are not payable once an injured worker "has reached his or her maximum degree of improvement," "is

---

[16] An earlier report by Mr. Cook on July 15, 2022, similarly documented "no neck pain."

[17] *See* W. Va. Code § 23-4-5 (providing that "[i]f the period of disability does not last longer than three days from the day the employee leaves work as the result of the injury, no [TTD] award shall be allowed . . . [.]"); W. Va. Code St. R. § 85-1-5.1 (providing that "[t]o qualify for [TTD] benefits, the claimant must be unable to work as a result of the compensable injury more than three (3) consecutive calendar days following the date of injury before benefits become payable.").

released to return to work," or "actually returns to work."

The claim administrator denied petitioner an award of TTD benefits because petitioner "ha[d] returned to work and [was] not entitled to wage loss benefits at th[at] time." Accordingly, the claim administrator awarded petitioner no TTD benefits and petitioner protested the order. Petitioner argues that an Attending Physician Benefits Form completed by Mr. Cook on November 4, 2022, indicating an estimated period of disability from June 28, 2022 to "present," and stating that petitioner "has not returned to work" and "continues to be off work since injury," as well as a second such form completed on March 13, 2023, again indicating the period of disability to be from the date of the workplace accident to "present," prove that petitioner was totally disabled. According to petitioner, based upon this evidence, the Board of Review should have awarded him TTD benefits from the date of injury until Dr. Mukkamala opined on July 31, 2023, that he had reached maximum degree of improvement. *See* W. Va. Code § 23-4-7a(e). We find no error.

The Board of Review considered medical records reflecting that, on the date of the accident, petitioner was discharged from the emergency department at CAMC without restriction; the Employees' and Physicians' Report of Occupational Injury or Disease form reflecting that the attending emergency department physician did not advise petitioner to remain off work; and the 24 Hr. Incident Investigation Report completed on the day of the accident confirming that petitioner was released from the emergency department to return to his next scheduled shift. Consistent with this evidence was petitioner's own testimony that he was ready, willing, and able to work his shift on the same evening that the workplace accident occurred and that he did, in fact, return to the worksite for that purpose only to be suspended and then terminated for substandard employment performance. This evidence remains unrefuted. Critically, petitioner points to no medical evidence from any healthcare provider causally connecting his purported inability to work to his compensable injury. Thus, we find no error in the Board of Review's order affirming the claim administrator order approving petitioner's lumbar sprain on a no-lost-time basis.

Finally, we address petitioner's argument that the Board of Review erred in affirming the claim administrator's order denying his request to reopen his claim for TTD benefits. Under West Virginia Code § 23-5-3a, where an application for further adjustment of a claim "fails to disclose a progression or aggravation in the claimant's condition, or some other fact or facts which were not previously considered in [] former findings, and which would entitle the claimant to greater benefits than the claimant has already received,"[18] the application will be denied for "fail[ure] to establish a prima facie cause for reopening the claim."[19]

We note, first, that because petitioner failed to include his request to reopen his claim for TTD benefits in the appendix record, this Court is unable to review on what basis the request was made. Likewise, petitioner's brief fails to make obvious reference to the evidence on which he based his reopening request. We have admonished that this Court "will take as nonexisting all facts

---

[18] *See* Syl. Pt. 2, *Wilson v. Workers' Comp. Comm'r,* 174 W.Va. 611, 328 S.E.2d 485 (1984) (holding that reinstatement of a claimant's TTD benefits "must be based upon new facts showing an aggravation or progression of the injury or other facts not theretofore considered").

[19] *See* Syl., *Harper v. State Workmen's Comp. Comm'r,* 160 W. Va. 364, 234 S.E.2d 779 (1977) (holding the evidentiary standard for obtaining a reopening of a claim to be "a prima facie cause, which means nothing more than any evidence which would tend to justify, but not to compel the inference that there has been a progression or aggravation of the former injury").

8

that do not appear in the [appendix] record and will ignore those issues where the missing record is needed to give factual support to the claim." *State v. Honaker*, 193 W. Va. 51, 56 n.4, 454 S.E.2d 96, 101 n.4 (1994). Second, petitioner fails to argue that either of the statutory prerequisites to the reopening of a claim for TTD benefits has been met—that is, that the evidence established an aggravation or progression of the compensable injury or the existence of facts not previously considered and which would entitle him to TTD benefits. *See* W. Va. Code § 23-5-3a. Rather, petitioner argues only that he is entitled to TTD benefits from the date of injury until the date it was determined that he had reached maximum degree of improvement because, he contends, he was never "released to return to work" nor "actually returned to work" after the workplace accident. The evidence of record, as we found above, is to the contrary. Therefore, we find no error in the order of the Board of Review affirming the claim administrator order denying petitioner's request to reopen his claim for TTD benefits.

Based upon the foregoing, the decision of the ICA affirming the orders of the Board of Review is affirmed.

Affirmed.

**ISSUED:** February 18, 2026

**CONCURRED IN BY:**
Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III