708 S.E.2d 509

**Charles W. BEVINS, Appellant,**

v.

**WEST VIRGINIA OFFICE OF the INSURANCE COMMISSIONER and Mountain Energy, LLC, Appellees.**

**Marty L. Greathouse, Appellant,**

v.

**West Virginia Office of the Insurance Commissioner and the Wackenhut Corporation, Appellees.**

**Nos. 35548, 35219.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 2010.

Decided Oct. 14, 2010.

William B. Gerwig, III, Charleston, WV, for Appellant, Charles W. Bevins.

Anna L. Faulkner, Workers' Compensation Defense Division, Charleston, WV, for Appellee, West Virginia Insurance Commissioner.

G. Patrick Jacobs, The Law Office. of G. Patrick Jacobs, L.C., Charleston, WV, for Appellant, Marty L. Greathouse.

Jack M. Rife, Workers' Compensation Litigation Division, Charleston, WV, for Appellee, West Virginia Insurance Commissioner.

DAVIS, Chief Justice:

The instant proceeding consists of two consolidated appeals, both of which present the same issue for this Court's resolution: is an injured worker entitled to receive temporary total disability workers' compensation benefits (hereinafter referred to as "TTD benefits")[1] while he/she also is receiving Social Security disability benefits[2] in connection with the same compensable injury? In both of the claimants' claims, the Workers' Compensation Board of Review (hereinafter referred to as "Board of Review") ruled that their receipt of Social Security disability benefits precluded them from also receiving TTD benefits. On appeal to this Court,[3] both claimants contend that the Workers' Compensation Board of Review has improperly interpreted W. Va.C.S.R. § 85-1-5.2 (2009)[4] in denying their requests for TTD benefits. Upon a review of the parties' arguments, the records presented for appellate consideration, and the governing authorities, we reverse the rulings rendered by the

1. Temporary total disability, for which benefits may be awarded, "is an inability to return to substantial gainful employment requiring skills or activities comparable to those of one's previous gainful employment during the healing or recovery period after injury." Syl. pt. 1, *Allen v. Workers' Comp. Comm'r,* 173 W.Va. 238, 314 S.E.2d 401 (1984).

2. "Disability," for purposes of an award of Social Security disability benefits, is

the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, [an individual] must have a severe impairment(s) that makes [him/her] unable to do [his/her] past relevant work ... or any other substantial gainful work that exists in the national economy.

20 C.F.R. § 404.1505(a) (2003) (Revised Vol. 2010).

3. On December 31, 2005, Brickstreet Mutual Insurance Company replaced the West Virginia Insurance Commissioner as the administrator of the West Virginia Workers' Compensation Fund. *See* W. Va.Code § 23-2C-1 *et seq.* Insofar as both of the claimants herein sustained their compensable injuries prior to this date, the Insurance Commissioner, as the administrator of the "Old Fund," continues to be the respondent party to these proceedings.

4. The current version of W. Va.C.S.R. § 85-1-5.2, *i.e.,* W. Va.C.S.R. § 85-1-5.2 (2009), was not in effect at the time of the events at issue in these appeals. However, because the relevant language of the prior versions of this regulation remains substantially the same in its present form, this opinion will cite to the current, 2009 version, of § 85-1-5.2. *Compare* W. Va.C.S.R. § 85-1-5.2 (2007) *and* W. Va.C.S.R. § 85-1-6.2 (2005) (relevant language appears in different section in 2005 version of Code of State Regulations) *with* W. Va.C.S.R. § 85-1-5.2 (2009). For the full text of W. Va.C.S.R. § 85-1-5.2 (2009), see note 5, *infra.*

Workers' Compensation Board of Review. Specifically, in Case Number 35548 regarding Mr. Bevins, we reverse the Board of Review's June 4, 2009, order and remand for entry of an order awarding Mr. Bevins TTD benefits in connection with his November 27, 2007, surgery related to his compensable injury. Additionally, in Case Number 35219 pertaining to Mr. Greathouse, we reverse the Board of Review's March 5, 2008, order and remand for further factual development to determine whether Mr. Greathouse is eligible to receive the TTD benefits he has requested.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Although both of the appeals in this case present the same legal issue, we separately will consider the facts giving rise to each claimant's request for TTD benefits.

### A. Case Number 35548—Charles Bevins

On May 30, 2000, Charles W. Bevins (hereinafter referred to as "Mr. Bevins"), a coal miner, injured his back in the course of and as a result of his employment when he attempted to move a loaded wheelbarrow. While treating his back injury, Mr. Bevins' physician discovered that Mr. Bevins also had sustained an injury to his ankle, causing his foot to drop. For this condition, Mr. Bevins underwent two surgeries, the most recent of which was on November 27, 2007. On December 10, 2007, Mr. Bevins filed an application to reopen his workers' compensation claim for the purpose of receiving TTD benefits. On his reopening application, Mr. Bevins did not indicate that he had retired; rather, he left both the "yes" and the "no" boxes next to the retirement question blank. However, Mr. Bevins did state on his application that "I'm receiving Social Security Disability Insurance[;] I no longer work due to this injury." By this application, Mr. Bevins sought TTD benefits for the period from November 27, 2007, to February 27, 2008. At the time he submitted this application, Mr. Bevins was fifty-one years old.

By decision dated March 10, 2008, the Workers' Compensation Claims Manager (hereinafter referred to as "Claims Manager") ruled that Mr. Bevins' claim could not be reopened, explaining:

This claim cannot be reopened because:

Title 85–1–5.2 states, "*If an individual retires, he or she is disqualified from receiving temporary total disability indemnity benefits as a result of an injury received from the place of employment.*"

Title 85–1–5.3 states, "*If a period of disability includes a reasonably ascertainable period of time during which the injured worker would not have been compensated from his or her employer, then temporary total disability indemnity benefits shall not be paid during that period.*"

Thus, the Claims Manager determined that Mr. Bevins was not entitled to receive TTD benefits.

Mr. Bevins appealed this determination. By decision dated October 27, 2008, the Workers' Compensation Office of Judges (hereinafter referred to as "OOJ") awarded Mr. Bevins TTD benefits, thus reversing the earlier determination. In summary, the OOJ stated that "[t]he claimant [Mr. Bevins] is not disqualified from temporary total disability benefits due to the sole reason that he is receiving Social Security Disability benefits." This ruling was based upon the OOJ's observations that Mr. Bevins is "52 years old" and that "[t]he preponderance of the evidence shows that the claimant has not retired." Therefore, the OOJ awarded Mr. Bevins the TTD benefits he had requested.

Thereafter, the Commissioner appealed the OOJ's decision to the Board of Review. By order entered June 4, 2009, the Board of Review reversed the OOJ's decision, thus denying Mr. Bevins' application for TTD benefits. In this regard, the Board of Review determined that TTD benefits serve as a wage replacement. Thus, because Mr. Bevins is receiving Social Security disability benefits and "has not returned to work since the May 30, 2000[,] injury in this claim," Mr. Bevins "has no wages to replace and is, therefore, not entitled to reopening on a temporary total disability basis or temporary total disability benefits[.]" From this ad-

verse ruling, Mr. Bevins appeals to this Court.

### B. Case Number 35219–Marty Greathouse

On December 17, 2003, Marty L. Greathouse (hereinafter referred to as "Mr. Greathouse"), a security guard, injured his arm, neck, and shoulder in the course of and as a result of his employment when a fellow employee pushed him into some office equipment. Mr. Greathouse received treatment for his injuries and ultimately received a six percent permanent partial disability award therefor. Following his maximum degree of medical improvement evaluation on February 28, 2005, however, Mr. Greathouse allegedly experienced an aggravation or progression of his work-related injury. Therefore, on August 16, 2006, Mr. Greathouse filed an application to reopen his workers' compensation claim for the purpose of receiving TTD benefits. On his reopening application, Mr. Greathouse indicated that he had retired and stated that he was receiving benefits from "Social Security." By this application, Mr. Greathouse sought TTD benefits for the period from June 26, 2006, to October 1, 2006. At the time he submitted this application, Mr. Greathouse was forty-one years old.

By decision dated September 25, 2006, the Claims Manager ruled that Mr. Greathouse's claim could not be reopened, explaining:

> This claim cannot be reopened because: WV CODE 23–5–3, AND TITLE 85–20–21 AND 85–20–3.9
>
> This decision was based primarily on the following: REVIEW OF MEDICAL RECORDS.

Thus, the Claims Manager determined that Mr. Greathouse was not entitled to receive TTD benefits.

Mr. Greathouse appealed this determination. By decision dated March 29, 2007, the Office of Judges awarded Mr. Greathouse TTD benefits, thus reversing the earlier determination. In summary, the OOJ stated that "[t]he claimant [Mr. Greathouse] is entitled to additional temporary total disability benefits. The claimant's treating physician has demonstrated that the claimant has suffered a progression or aggravation of his

compensable condition." This ruling was based upon the OOJ's observations that Mr. Greathouse was "approved for Social Security Disability benefits and not retirement benefits [and] that the claimant is only 41 years of age." The OOJ further explained that

> [a] claimant cannot be denied additional temporary total disability benefits upon reaching his or her maximum degree of medical improvement if the claimant's treating physician has presented sufficient medical evidence which demonstrates that a claimant has suffered a progression or aggravation of his or her compensable injury. [Mr. Greathouse's treating physician] has demonstrated that the claimant suffered a progression or aggravation of his compensable condition after being evaluated . . . in 2005. The claimant's receiving of Social Security Disability benefits further demonstrates his inability to return to work[.]

Therefore, the OOJ awarded Mr. Greathouse the TTD benefits he had requested.

Thereafter, the Commissioner appealed the OOJ's decision to the Board of Review. By order entered March 5, 2008, the Board of Review reversed the OOJ's decision, thus denying Mr. Greathouse's application for TTD benefits. In this regard, the Board of Review ruled that

> [t]he evidence of record establishes that the claimant [Mr. Greathouse] was not entitled to temporary total disability benefits, which are wage replacement benefits. The evidence demonstrates that the claimant was receiving Social Security Disability benefits at the time he signed the Claim Re-opening Application in 2006. Consequently, he had no wages to replace. Therefore, this Board holds that the claimant is not entitled to temporary total disability benefits[.]

From this adverse ruling, Mr. Greathouse appeals to this Court.

### II.

### STANDARD OF REVIEW

Governing our review of both Mr. Bevins' and Mr. Greathouse's appeals is the

standard set forth in W. Va.Code § 23–5–15(b, d) (2005) (Repl.Vol.2010):

> (b) In reviewing a decision of the board of review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]
>
> . . . .
>
> (d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision.

We have interpreted the scope of our review to mean that "[w]hen it appears from the proof upon which the Workmen's Compensation [Board of Review] acted that its finding was plainly wrong an order reflecting that finding will be reversed and set aside by this Court." Syl. pt. 5, *Bragg v. State Workmen's Comp. Comm'r*, 152 W.Va. 706, 166 S.E.2d 162 (1969).

We now will consider the errors assigned by the parties in light of this standard.

## III.

## DISCUSSION

Both of the consolidated cases on appeal to this Court present the same issue for our resolution: can a claimant, who is receiving Social Security disability benefits in connection with the claimant's compensable injury, also receive temporary total disability workers' compensation benefits as a result of an aggravation or progression of the same compensable injury? In both of the cases presently before us, the claimant sustained a compensable injury that prevented him from returning to work, and, as a result, the claimant applied for and received Social Security disability benefits. Subsequently, the claimant sustained an aggravation or progression of his compensable injury and filed an application for reopening to request TTD benefits therefor. The Claims Manager denied each claimant's request for TTD benefits; the Office of Judges granted each claimant the TTD benefits he had requested; and the Board of Review reversed each award, thereby denying the claimants TTD benefits.

On appeal to this Court, Mr. Bevins argues that the Board of Review erred by ruling that his receipt of Social Security Disability benefits precludes him from receiving an award of TTD benefits. In this regard, Mr. Bevins claims that the provision upon which the Claims Manager denied reopening, W. Va.C.S.R. § 85–1–5.2 (2009),[5] does not bar

---

5. W. Va.C.S.R. § 85–1–5.2 (2009) states, in full, that,

> [i]f an individual retires, as long as the individual remains retired, he or she is disqualified from receiving temporary total disability indemnity benefits as a result of an injury received from the place of employment from which he or she retired, unless the application for benefits was received prior to his or her retirement. An individual who has retired is also barred from reopening for temporary total disability indemnity benefits an earlier claim

filed in connection with an injury received at the place of employment from which he or she retired. *This section does not preclude* payments of benefits otherwise due a claimant if the retiree has returned to employment and suffers a compensable injury or *payment of benefits if the compensable injury causes the individual to retire.*

(Emphasis added). Despite the great reliance placed upon this regulation in the initial denial of Mr. Bevins' reopening application, we find that this provision is not determinative of the

his receipt of TTD benefits insofar as (1) he has not retired, and (2) to the extent his absence from the workforce could be construed to be a state of retirement, such unemployment was caused by his compensable injury and, thus, does not prevent him from receiving an award of TTD benefits.

Similarly, Mr. Greathouse argues that the Board of Review erred by ruling that his receipt of Social Security Disability benefits precludes him from receiving an award of TTD benefits. In this regard, Mr. Greathouse asserts that he testified that he "sought Social Security Disability on a temporary basis until he could medically recover and return to work." Insofar as he has established a progression or aggravation of his compensable injury, Mr. Greathouse contends that he is entitled to an award of TTD benefits.

In both cases, the Commissioner responds that the claimants are not entitled to TTD benefits because they are receiving Social Security Disability benefits. In this regard, the Commissioner contends that, "[b]y receiving Social Security Disability benefits, the claimant[s] ha[ve] voluntarily removed [themselves] from the workforce and therefore ha[ve] no wages to replace." The Commissioner further argues that TTD benefits are intended to serve as a form of wage replacement for workers who are injured in the workplace and who, as a result of those injuries, are prevented from returning thereto. Thus, the Commissioner urges that "[i]f the claimant[s] ha[ve] applied for and [are] receiving Social Security Disability benefits, [they] could not be working for the employer, or any employer, and [they] therefore would not receive compensation." Consequently, the

Commissioner contends, the claimants are not eligible to receive TTD benefits, which serve to replace wages lost as a result of a compensable injury, because they have no lost wages to replace.

■ Before reaching the specific issue presented by these consolidated appeals, it is instructive to review the statutory and case law governing TTD benefits and reopening applications, generally. We previously have explained that "[t]emporary total disability," for which TTD benefits may be awarded, "is an inability to return to substantial gainful employment requiring skills or activities comparable to those of one's previous gainful employment during the healing or recovery period after injury." Syl. pt. 1, *Allen v. Workers' Comp. Comm'r*, 173 W.Va. 238, 314 S.E.2d 401 (1984). Typically, TTD benefits are awarded to compensate an injured worker immediately following his/her compensable injury. The governing rules further clarify that,

> [t]o qualify for temporary total disability benefits, the claimant must be unable to work as a result of the compensable injury more than three (3) consecutive calendar days following the date of injury before benefits become payable. To receive temporary total disability benefits for the first three (3) days of disability, the claimant must be unable to work as a result of the compensable injury more than seven (7) consecutive calendar days following the date of injury.

W. Va.C.S.R. § 85–1–5.1 (2009).[6]

Once a claimant has received a TTD award, "[t]he claimant's entitlement to tem-

---

issue before us because it does not speak directly to the receipt of Social Security disability benefits. *See* Section III., *infra*.

6. W. Va.Code § 23–4–1c(b–c) (2009) (Repl.Vol. 2010) additionally detail the parameters of a TTD award:

(b) Where it appears from the employer's report, or from proper medical evidence, that a compensable injury will result in a disability which will last longer than three days as provided in section five [§ 23–4–5] of this article, the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, may immediately enter an order commencing the payment of temporary total disability bene-

fits to the claimant in the amounts provided for in sections six [§ 23–4–6] and fourteen [§ 23–4–14] of this article, and the payment of the expenses provided for in subsection (a), section three [§ 23–4–3] of this article, relating to the injury, without waiting for the expiration of the thirty-day period during which objections may be filed to the findings as provided in section one, article five of this chapter. The Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, shall enter an order commencing the payment of temporary total disability or medical benefits within fifteen working days of receipt of either the employee's or employer's report of injury, whichever is received sooner, and also upon

porary total disability benefits ceases upon the entry of [a permanent partial disability] award unless previously terminated under the provisions of subsection (e) of this section." W. Va.Code § 23–4–7a(c)(1) (2005) (Repl.Vol.2010). Pursuant to W. Va.Code § 23–4–7a(e), TTD benefits terminate upon the claimant having attained his/her maximum degree of medical improvement, having been released to return to work, or having actually returned to work.[7] In other words, "[u]nder the Workmen's Compensation Act, W. Va.Code § 23–1–1 et seq., temporary total disability benefits should be terminated where the Commissioner finds that a claimant either has reached his maximum degree of medical improvement from the industrial accident, or has been medically certified to return to work." Syl. pt. 1, *Mitchell v. State Workmen's Comp. Comm'r*, 163 W.Va. 107, 256 S.E.2d 1 (1979).

■■■ Apart from receiving TTD benefits at the time of the compensable injury, a claimant whose claim has been closed may later request that his/her claim be reopened for an award of additional TTD benefits if he/she has incurred a progression or aggra-

---

receipt of either a proper physician's report or any information necessary for a determination. The Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, shall give to the parties immediate notice of any order granting temporary total disability or medical benefits. When an order granting temporary total disability benefits is made, the claimant's return-to-work potential shall be assessed. The Insurance Commissioner may schedule medical and vocational evaluation of the claimant and assign appropriate personnel to expedite the claimant's return to work as soon as reasonably possible.

(c) The Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, may enter orders granting temporary total disability benefits upon receipt of medical evidence justifying the payment of the benefits. The Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, may not enter an order granting prospective temporary total disability benefits for a period of more than ninety days: Provided, That when the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, determines that the claimant remains disabled beyond the period specified in the prior order granting temporary total disability benefits, the Insurance Commissioner, private carrier or self-insured employer shall enter an order continuing the payment of temporary total disability benefits for an additional period not to exceed ninety days and shall give immediate notice to all parties of the decision.

Because the differences in the applicable language between the former and the current versions of W. Va.Code § 23–4–1c are merely stylistic changes, this opinion will cite to the current, 2009, version of § 23–4–1c. *Compare* W. Va. Code § 23–4–1c (2005) (Repl.Vol.2005) *with* W. Va.Code § 23–4–1c (2009) (Repl.Vol.2010).

7. W. Va.Code § 23–4–7a(e) (2005) (Repl.Vol. 2010) instructs that,

(e) [n]otwithstanding any provision in subsection (c) of this section, the commission, successor to the commission, other private car-

rier or self-insured employer, whichever is applicable, shall enter a notice suspending the payment of temporary total disability benefits but providing a reasonable period of time during which the claimant may submit evidence justifying the continued payment of temporary total disability benefits when:

(1) The physician or physicians selected by the commission conclude that the claimant has reached his or her maximum degree of improvement;

(2) When the authorized treating physician advises the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, that the claimant has reached his or her maximum degree of improvement or that he or she is ready for disability evaluation and when the authorized treating physician has not made any recommendation with respect to a permanent disability award as provided in subsection (c) of this section;

(3) When other evidence submitted to the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, justifies a finding that the claimant has reached his or her maximum degree of improvement; or

(4) When other evidence submitted or otherwise obtained justifies a finding that the claimant has engaged or is engaging in abuse, including, but not limited to, physical activities inconsistent with his or her compensable workers' compensation injury.

In all cases, a finding by the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, that the claimant has reached his or her maximum degree of improvement terminates the claimant's entitlement to temporary total disability benefits regardless of whether the claimant has been released to return to work. Under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns to work. . . .

vation of his/her compensable injury. Both Mr. Bevins and Mr. Greathouse have based their reopening requests for additional TTD benefits on such a progression or aggravation of their compensable injuries. Upon demonstrating medical evidence of temporary total disability, an award of additional TTD benefits would be justified because all normal consequences from a compensable injury are, themselves, compensable:

> If a worker's compensation claimant shows that he received an initial injury which arose out of and in the course of his employment, then every normal consequence that flows from the injury likewise arises out of the employment. If, however, a subsequent aggravation of the initial injury arises from an independent intervening cause not attributable to the claimant's customary activity in light of his condition, then such aggravation is not compensable.

Syl. pt. 4, *Wilson v. Workers' Comp. Comm'r*, 174 W.Va. 611, 328 S.E.2d 485 (1984). Therefore,

> [f]or purposes of obtaining a reopening of a Workmen's Compensation claim under

the provisions of W. Va.Code § 23–5–1a [now W. Va.Code § 23–5–2 (2005) (Repl. Vol.2010) ] [8] and –1b [now W.Va.Code § 23–5–3 (2009) (Repl.Vol.2010) ] [9], the claimant must show a prima facie cause, which means nothing more than any evidence which would tend to justify, but not to compel the inference that there has been a progression or aggravation of the former injury.

Syl., *Harper v. State Workmen's Comp. Comm'r*, 160 W.Va. 364, 234 S.E.2d 779 (1977) (footnotes added). *See also* W. Va. Code § 23–5–3 (2009) (Repl.Vol.2010) [10] (refusing reopening where "an application filed under section two [§ 23–5–2] of this article fails to disclose a progression or aggravation in the claimant's condition, or some other fact or facts which were not previously considered in [the Insurance Commissioner's] former findings and which would entitle the claimant to greater benefits than the claimant has already received"). An application for reopening may request additional TTD benefits. *See* W. Va.Code § 23–4–16(b)

**8.** In 1995, W. Va.Code § 23–5–1a was recodified at W. Va.Code § 23–5–2 (2005) (Repl.Vol.2010). The prior version of W. Va.Code § 23–5–1a (1990) (Repl.Vol.1994), before its recodification, provided:

> In any case where an injured employee makes application in writing for a further adjustment of his or her claim under the provisions of section sixteen [§ 23–4–16], article four of this chapter, and such application discloses cause for a further adjustment thereof, the commissioner shall, after due notice to the employer, make such modifications or changes with respect to former findings or orders in such claim as may be justified, and any party dissatisfied with any such modification or change so made by the commissioner shall, upon proper and timely objection, be entitled to a hearing, as provided in section one or section one-h [§ 23–5–1 or § 23–5–1h] of this article.

**9.** The 1995 workers' compensation statutory amendments also recodified W. Va.Code § 23–5–1b, the language of which is now contained in W. Va.Code § 23–5–3 (2009) (Repl.Vol.2010). Former W. Va.Code § 23–5–1b (1993) (Repl.Vol. 1994) read:

> If, however, in any case in which application for further adjustment of a claim is filed under the next preceding section [§ 23–5–1a], it shall appear to the commissioner that such applica-

tion fails to disclose a progression or aggravation in the claimant's condition, or some other fact or facts which were not theretofore considered by the commissioner in his or her former findings, and which would entitle such claimant to greater benefits than the claimant has already received, the commissioner shall, within a reasonable time, notify the claimant and the employer that such application fails to establish a prima facie cause for reopening the claim. Such notice shall be in writing stating the reasons for denial and the time allowed for objection to such decision of the commissioner. The claimant may, within thirty days after receipt of such notice, object in writing to such finding and unless the objection is filed within such thirty-day period, no such objection shall be allowed, such time limitation being hereby declared to be a condition of the right to such objection and hence jurisdictional. Upon receipt of an objection, the commissioner or office of judges shall afford the claimant an evidentiary hearing as provided in section one or one-h [§ 23–5–1 or § 23–5–1h] of this article.

**10.** The pertinent language of the present version of W. Va.Code § 23–5–3 is identical to that contained in the former version of this statute. *Compare* W. Va.Code § 23–5–3 (2005) (Repl.Vol. 2005) *with* W. Va.Code § 23–5–3 (2009) (Repl. Vol.2010).

(2005) (Repl.Vol.2010) [11]; W. Va.Code § 23–4–1c(e) (2009) (Repl.Vol.2010).[12] Nevertheless, the claimant seeking additional TTD benefits still must demonstrate that he/she has satisfied the basic requirements for re-opening: "[w]here a claimant's temporary total disability payments have been terminated and he desires to have them reinstated under W. Va.Code § 23–5–1a [now W. Va.Code § 23–5–2 (2005) (Repl.Vol.2010) ] [13] and –1b [now W. Va.Code § 23–5–3 (2009) (Repl.Vol. 2010) ] [14], such reinstatement must be based upon new facts showing an aggravation or progression of the injury or other facts not thereto considered." Syl. pt. 2, *Wilson v. Workers' Comp. Comm'r*, 174 W.Va. 611, 328 S.E.2d 485 (footnotes added).

Regardless of whether the claimant has received TTD benefits at the time of the compensable injury or later through an application for reopening, though, the maximum amount of TTD benefits a claimant may receive for a compensable injury is fixed and set by statute. *See* W. Va.Code § 23–4–6(b–c) (2005) (Repl.Vol.2010).[15]

**11.** W. Va.Code § 23–4–16(b) (2005) (Repl.Vol. 2010) establishes the time period within which the claimant's reopening application requesting additional TTD benefits must be ruled upon:

> (b) In any claim in which an injured employee makes application for a further period of temporary total disability, if the application is in writing and filed within the applicable time limit stated above, the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall pass upon the request within thirty days of the receipt of the request. If the decision is to grant the request, the order shall provide for the receipt of temporary total disability benefits....

**12.** Directions for the payment of additional TTD benefits to a claimant are set forth in W. Va.Code § 23–4–1c(e) (2009) (Repl.Vol.2010):

> (e) Subject to the limitations set forth in section sixteen [§ 23–4–16] of this article, upon a finding of the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, that a claimant who has sustained a previous compensable injury which has been closed by order, or by the claimant's return to work, suffers further temporary total disability or requires further medical or hospital treatment resulting from the compensable injury, payment of temporary total disability benefits to the claimant in the amount provided for in sections six [§ 23–4–6] and fourteen [§ 23–4–14] of this article shall immediately commence, and the expenses provided for in subsection (a), section three [§ 23–4–3] of this article, relating to the disability, without waiting for the expiration of the thirty-day period during which objections may be filed. Immediate notice to the parties of the decision shall be given.

See *supra* note 6.

**13.** *See supra* note 8.

**14.** *See* note 9, *supra*.

**15.** W. Va.Code § 23–4–6(b–c) (2005) (Repl.Vol. 2010) explicitly direct that,

> [w]here compensation is due an employee under the provisions of this chapter for personal injury, the compensation shall be as provided in the following schedule:
>
> . . . .
>
> (b) For all awards made on and after the effective date of the amendment and reenactment of this section during the year two thousand three, if the injury causes temporary total disability, the employee shall receive during the continuance of the disability a maximum weekly benefit to be computed on the basis of sixty-six and two-thirds percent of the average weekly wage earnings, wherever earned, of the injured employee, at the date of injury, not to exceed one hundred percent of the average weekly wage in West Virginia: Provided, That in no event shall an award for temporary total disability be subject to annual adjustments resulting from changes in the average weekly wage in West Virginia: Provided, however, in the case of a claimant whose award was granted prior to the effective date of the amendment and reenactment of this section during the year two thousand three, the maximum benefit rate shall be the rate applied under the prior enactment of this section which was in effect at the time the injury occurred. The minimum weekly benefits paid under this subdivision shall not be less than thirty-three and one-third percent of the average weekly wage in West Virginia, except as provided in sections six-d [§ 23–4–6d] and nine [§ 23–4–9] of this article. In no event, however, shall the minimum weekly benefits exceed the level of benefits determined by use of the applicable federal minimum hourly wage: Provided further, That any claimant receiving permanent total disability benefits, permanent partial disability benefits or dependents' benefits prior to the first day of July, one thousand nine hundred ninety-four, shall not have his or her benefits reduced based upon the requirement in this subdivision that the minimum weekly benefit shall not exceed the applicable federal minimum hourly wage.
>
> (c) Subdivision (b) of this section is limited as follows: Aggregate award for a single injury causing temporary disability shall be for a period not exceeding two hundred eight weeks;

Having established the foundation upon which Mr. Bevins and Mr. Greathouse base their claims for relief, it is apparent that the claimants' entitlement to receive TTD benefits and to reopen on this basis are governed by statute. Such stringent statutory regulation is to be expected given that " '[t]he right to workmen's compensation benefits is wholly statutory.' Syllabus point 2, in part, *Dunlap v. State Compensation Director*, 149 W.Va. 266, 140 S.E.2d 448 (1965)." Syl. pt. 9, *Simpson v. West Virginia Office of Ins. Comm'r*, 223 W.Va. 495, 678 S.E.2d 1 (2009). *Accord* Syl. pt. 1, in part, *Bounds v. State Workmen's Comp. Comm'r*, 153 W.Va. 670, 172 S.E.2d 379 (1970) ("The right to workmen's compensation benefits is created wholly by statute."). As the body solely responsible for the regulation of workers' compensation in the State of West Virginia, the Legislature has clearly delineated the eligibility criteria for both an award of TTD benefits, itself, and for requesting a reopening of a claim for additional TTD benefits. Thus, it would stand to reason that the answer to the pivotal question before us, *i.e.*, can a claimant simultaneously receive Social Security disability benefits *and* workers' compensation TTD benefits, would lie in the workers' compensation statutes, themselves. Alas, the Legislature, despite its painstaking categorization of instances in which a claimant may or may not receive workers' compensation benefits in connection with his/her compensable injury, has remained silent as to the effect an award of Social Security disability benefits has upon the claimant's entitlement to receive TTD benefits for the same compensable injury.

In this regard, the Legislature has precisely identified certain instances in spite of which a claimant nevertheless may receive workers' compensation benefits. *See, e.g.,* W. Va.Code § 23–4–2(c) (2005) (Repl.Vol. 2010) (allowing injured worker to receive workers' compensation benefits when compensable injury was caused by employer's

intentional act); W. Va.Code § 23–4–6c (1995) (Repl.Vol.2010) (extending workers' compensation coverage to sheltered workshop employees); W. Va.Code § 23–4–6d (2003) (Repl.Vol.2010) (permitting part-time employees to receive workers' compensation benefits); W. Va.Code § 23–4–15a (2005) (Repl.Vol.2010) (recognizing nonresident aliens among beneficiaries of workers' compensation benefits); W. Va.C.S.R. § 85–1–5.2 (lifting bar to receipt of workers' compensation benefits imposed upon retired employees for employees who retired because their compensable injuries prevented them from returning to work). *See also* W. Va.Code § 23–4–6(*l*) (stating that TTD benefits are not deductible from PPD award).

By contrast, the Legislature has decided that other scenarios expressly preclude an injured employee from receiving workers' compensation benefits. *See, e.g.,* W. Va.Code § 23–4–1e (2005) (Repl.Vol.2010) (precluding receipt of workers' compensation benefits during periods of confinement); W. Va.Code § 23–4–1f (1993) (Repl.Vol.2010) (abolishing mental-mental claims); W. Va.Code § 23–4–2(a) (denying workers' compensation benefits to employee whose work-related injury was self-inflicted or sustained while the employee was intoxicated); W. Va.Code § 23–4–9b (2003) (Repl.Vol.2010) (refusing to consider preexisting conditions in computation· of workers' compensation benefits); W. Va. C.S.R. § 85–1–5.2 (barring most retired employees, including those receiving Social Security retirement benefits, from receiving workers' compensation benefits); W. Va. C.S.R. § 85–1–5.3 (2009) (prohibiting seasonal workers from receiving workers' compensation benefits during their scheduled absences from work). *See also* W. Va.Code § 23–4–5 (2003) (Repl.Vol.2010) (determining claimant whose "period of disability does not last longer than three days" to be ineligible to receive TTD benefits).

aggregate award for a single injury for which an award of temporary total disability benefits is made on or after the effective date of the amendment and reenactment of this section in the year two thousand three shall be for a period not exceeding one hundred four weeks. Notwithstanding any other provision of this

subdivision to the contrary, no person may receive temporary total disability benefits under an award for a single injury for a period exceeding one hundred four weeks from the effective date of the amendment and reenactment of this section in the year two thousand three.

Finally, the Legislature has determined that yet other factual predicates may impact upon a claimant's entitlement to receive workers' compensation benefits but that the mere existence of such facts, in and of themselves, does not automatically bar an award. W. Va.Code § 23–4–1c(a)(2)(A) (employee's scheduled shutdown); W. Va.Code § 23–4–1c(a)(2)(B) (employee's layoff or termination from employment); W. Va.Code § 23–4–1c(a)(2)(C–D) (employee's receipt of unemployment compensation benefits).

Conspicuously missing from any of these categories, however, is the answer to the question squarely before us: "Does an award of Social Security disability benefits preclude a claimant's entitlement to receive temporary total disability workers' compensation benefits for the same compensable injury?" Absent a definite statement from the Legislature on this point, we are left to believe the answer is a resounding "No." Because workers' compensation is solely a creature of statute, the rules of statutory construction provide support for this conclusion in those scenarios for which the Legislature has provided specific guidance.

▉ In matters of statutory interpretation, this Court must presume that the Legislature knows what it has said in its prior enactments and that it means what it has said therein. *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (" 'Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.' " (*quoting Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992))). As such, "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled or rewritten." *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). Thus, "[i]f the language of an enactment is clear and within the constitutional authority of the lawmaking body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery."

Syl. pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W.Va. 326, 472 S.E.2d 411 (1996). In other words, this Court is "obliged not to add to statutes something the Legislature purposefully omitted." *Banker v. Banker*, 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) (citations omitted).

▉ Here, the Legislature specifically has enumerated certain instances in which a claimant can and cannot receive workers' compensation benefits. By expressly *including* conditions which would render a claimant ineligible from receiving workers' compensation benefits, the Legislature has implicitly *excluded* all others. That is to say, " '[*i* ]nclusio unius est exclusio alterius,' the expression that 'one is the exclusion of the others,' has force in this case. This doctrine informs courts to exclude from operation those items not included in the list of elements that are given effect expressly by statutory language." *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 630 n. 11, 474 S.E.2d 554, 560 n. 11 (1996). *Cf. Johnson v. Continental Cas. Co.*, 157 W.Va. 572, 578, 201 S.E.2d 292, 296 (1973) ("[T]he exclusion of one subject or thing in a statute is the inclusion of all others." (citations omitted)). When faced with similar statutory lists of included and excluded items, we have construed the items specified by the Legislature to constitute the boundaries, or outer limits, of its legislative classification. *See, e.g., Collins v. AAA Homebuilders, Inc.*, 175 W.Va. 427, 429, 333 S.E.2d 792, 794 (1985) (observing that, because list of prohibited reasons for refusal to rent "does not include ... criminal convictions, ... the rule of construction expressed by the Latin, *inclusio unius est exclusio alterius* (the certain designation of one precludes the implication of another) leads us to the conclusion that the legislature did not intend to include any additional categories"). *See also State ex rel. Baker v. Bolyard*, 221 W.Va. 713, 719, 656 S.E.2d 464, 470 (2007) (Starcher, J., dissenting) (applying *"inclusio unius est exclusio alterius"* to conclude that, "by specifically *including* those convictions that result from pleas of guilty, the Legislature thereby means to *exclude* convictions resulting from pleas *of nolo*

*contendere* for license revocation purposes"). This Court is not at liberty to substitute its judgment for that of the legislative branch, and, thus, "[w]here, as here, the legislature has made what appears to be a comprehensive statement regarding classifications offensive to public policy, this Court will not add to that list in the absence of constitutional mandate." *Collins v. AAA Homebuilders, Inc.*, 175 W.Va. at 429, 333 S.E.2d at 794. Therefore, because the Legislature has elected *not* to include the receipt of Social Security disability benefits within the list of reasons rendering a claimant ineligible to receive workers' compensation benefits and because it is not the province of this Court to alter statutes which the Legislature has seen fit to enact, it must be presumed that the Legislature did not intend to impose such a bar upon recipients of Social Security disability benefits.

Applying these rules of statutory construction to the legislation before us, we are left with the definite and firm conviction that the Legislature has not barred claimants, such as those before us, from receiving the relief they seek in this case choosing, instead, to remain silent on the matter. Accordingly, we hold that a claimant simultaneously may receive temporary total disability workers' compensation benefits while also receiving Social Security disability benefits for the same compensable injury. However, before a claimant may be awarded such temporary total disability workers' compensation benefits, he/she must be eligible to receive such an award based upon a progression or aggravation of his/her compensable injury or other medical evidence indicating such an award would be warranted as contemplated by W. Va.Code § 23–4–1c(b–c) (2009) (Repl.Vol. 2010), W. Va.Code § 23–4–1c(e) (2009) (Repl. Vol.2010), and W. Va.Code § 23–4–16(b) (2005) (Repl.Vol.2010).

As alluded to during the course of these proceedings, there exists a valid concern that claimants who are permitted to receive both TTD and Social Security disability benefits ultimately may receive more in benefits than they would have earned had they been employed; such a duplication of benefits is often referred to as a double recovery or "double dipping." *See, e.g., U.S. West Commc'ns, Inc. v. Industrial Claim Appeals Office of State of Colorado*, 978 P.2d 154, 156 (Colo.App.1999). Many jurisdictions have adopted statutes to adjust a claimant's workers' compensation award to account for his/her receipt of Social Security disability benefits. *See, e.g., Frost v. Chater*, 952 F.Supp. 659 (D.N.D.1996); *Cody v. Industrial Claim Appeals Office of State of Colorado*, 940 P.2d 1042 (Colo.App.1996); *Sonnier v. Town of Vinton*, 759 So.2d 818 (La.Ct.App. 1999). West Virginia has not done so.[16] In the absence of a state statute offsetting the two awards, however, Congress has made

16. Although the West Virginia Legislature has not specifically made provision for the effect a Social Security disability award has upon a claimant's workers' compensation benefits, it has recognized an offset when a claimant receives both workers' compensation TTD benefits and benefits under an employer-sponsored plan, to which the employee has not contributed:

(j) If a claimant is receiving benefits paid through a wage replacement plan, salary continuation plan or other benefit plan provided by the employer to which the employee has not contributed, and that plan does not provide an offset for temporary total disability benefits to which the claimant is also entitled under this chapter as a result of the same injury or disease, the employer shall notify the Insurance Commissioner, private carrier or self-insured [sic] of the duplication of the benefits paid to the claimant. Upon receipt of the notice, the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, shall reduce the temporary total disability benefits provided under this chapter by an amount sufficient to ensure that the claimant does not receive monthly benefits in excess of the amount provided by the employer's plan or the temporary total disability benefit, whichever is greater: Provided, That this subsection does not apply to benefits being paid under the terms and conditions of a collective bargaining agreement.

W. Va.Code § 23–4–1c(j) (2009) (Repl.Vol.2010). *See supra* note 6. *Cf.* W. Va.Code § 23–4–1c(h) (describing procedure for recovery from claimant of overpayment of temporary total disability benefits); Syl. pt. 4, *Mitchell v. State Workmen's Comp. Comm'r*, 163 W.Va. 107, 256 S.E.2d 1 (1979) ("The overpayment provisions of W. Va. Code § 23–4–1c, apply only where the Commissioner determines in a W. Va.Code § 23–5–1, proceeding, that the claimant was not lawfully entitled to the temporary total disability benefits originally by virtue of the fact that the claim did not jurisdictionally qualify.").

provision for adjusting an individual's Social Security disability benefits in consideration of his/her receipt of workers' compensation benefits.

Indeed, the provisions of the Social Security Act anticipate the instance where an individual receives both Social Security and workers' compensation benefits. By its terms, the act has ensured that an employee will not recover a windfall, by statutorily providing for an offset from the individual's Social Security payments. See 42 U.S.C. § 424a (2006) [17] (reducing computation of Social Security benefits if employee receives workers' compensation benefits).

*Manchester v. Drivers Mgmt., LLC,* 278 Neb. 776, 785–86, 775 N.W.2d 179, 186–87 (2009) (footnote added). *But see Richardson v. Belcher,* 404 U.S. 78, 94, 92 S.Ct. 254, 263, 30 L.Ed.2d 231 (1971) (Marshall, J., dissenting) ("However federal benefits may not be reduced if the workmen's compensation plan provides for a reduction of its benefits in the event of an overlap." (citation omitted)); *Frost,* 952 F.Supp. at 662 ("The [Social Security] Act does not allow the Commissioner to take an offset if the workers' compensation

award already offset Social Security." (footnote omitted)). It goes without saying that the very fact that both state and federal offset provisions exist provides further support for our above-stated holding which finds that a claimant simultaneously may receive TTD and Social Security disability benefits.

The net effect of the federal offset legislation is to "limit[ ] total state and federal benefits to 80% of the employee's average earnings prior to the disability, reduce[ ] the duplication inherent in the [state workers' compensation and federal Social Security disability] programs and at the same time allow[ ] a supplement to workmen's compensation where the state payments were inadequate." *Richardson v. Belcher,* 404 U.S. at 83, 92 S.Ct. at 258, 30 L.Ed.2d 231. In other words,

[w]hen a disabled person receives both Social Security and state workers' compensation, the [Social Security] Act provides for a reduction in the Social Security Benefits. The setoff provision sets a ceiling of 80% of "average current earnings" on total workers' compensation and Social Security disability payments.... The purpose of this provision is to avoid a situation in

---

17. The federal offset is described in 42 U.S.C. § 424a (1994) (2006 ed.), in pertinent part, as follows:

(a) **Conditions for reduction; computation**
If for any month prior to the month in which an individual attains the age of 65—
(1) such individual is entitled to benefits under section 423 of this title, and
(2) such individual is entitled for such month to—
(A) periodic benefits on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State ...
the total of his benefits under section 423 of this title for such month and of any benefits under section 402 of this title for such month based on his wages and self-employment income shall be reduced (but not below zero) by the amount by which the sum of—
(3) such total of benefits under sections 423 and 402 of this title for such month, and
(4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,
exceeds the higher of—
(5) 80 per centum of his "average current earnings", or

(6) the total of such individual's disability insurance benefits under section 423 of this title for such month and of any monthly insurance benefits under section 402 of this title for such month based on his wages and self-employment income, prior to reduction under this section.
....
(d) **Exception**
The reduction of benefits required by this section shall not be made if the law or plan described in subsection (a)(2) of this section under which a periodic benefit is payable provides for the reduction thereof when anyone is entitled to benefits under this subchapter on the basis of the wages and self-employment income of an individual entitled to benefits under section 423 of this title, and such law or plan so provided on February 18, 1981.
*Accord* 20 C.F.R. § 404.408 (1997) (Revised Vol. 2010) (same). *See also* Virginia Reno, Cecili Thompson Williams, & Ishita Sengupta, *Workers' Compensation, Social Security Disability Insurance, and the Offset: A Fact Sheet,* Soc. Sec. Bull. vol. 65, no. 4, 2003/2004, *available at* http://www.ssa.gov/policy/docs/ssb/v65n4/v65n4p3.html (last modified Aug. 19, 2010) (discussing differences between state workers' compensation benefits and federal social security disability benefits; also explaining offset).

which a worker receiving both state workers' compensation benefits and Social Security benefits takes home more money in disability payments than he or she did from working before the disability.

*Frost v. Chater*, 952 F.Supp. at 661–62 (footnotes omitted).

Thus, despite the lack of an offset provision in this State's workers' compensation statutes that applies when a claimant is receiving both state workers' compensation benefits and federal Social Security disability benefits, these federal provisions will operate to preclude either Mr. Bevins or Mr. Greathouse from receiving an impermissible double recovery. Therefore, we hold that when a claimant simultaneously receives temporary total disability workers' compensation benefits while also receiving Social Security disability benefits for the same compensable injury, the federal offset provisions set forth in 42 U.S.C. § 424a (1994) (2006 ed.) operate to preclude the claimant from receiving an impermissible double recovery of benefits.

Applying these holdings to the facts of the cases *sub judice*, it is evident that the Board of Review erred by refusing the reopening applications of Mr. Bevins and Mr. Greathouse, wherein they sought TTD benefits, solely because they already were receiving Social Security disability benefits. Accordingly, the Board's decisions in both cases are reversed.

 With respect to Mr. Bevins' reopening application in Case Number 35548, we find that he has sufficiently demonstrated his medical eligibility for additional TTD benefits insofar as his request for benefits coincides with his convalescence from his most recent surgery required by his compensable injury. Therefore, we remand Mr. Bevins' case for entry of an order awarding him the TTD benefits he has requested, with such benefits not to exceed the maximum allowable by statute.

As for Mr. Greathouse's reopening application in Case Number 35219, we are not convinced that the evidence he has presented in connection therewith sufficiently demonstrates his medical eligibility for additional TTD benefits. Thus, we remand Mr. Great-

house's case for further factual development to determine whether he has, in fact, sustained a progression or aggravation of his compensable injury so as to warrant the award of TTD benefits he has requested.

## IV.

### CONCLUSION

For the foregoing reasons, the Workers' Compensation Board of Review order of June 4, 2009, in Case Number 35548, pertaining to Mr. Bevins, is hereby reversed and remanded for entry of an order awarding Mr. Bevins TTD benefits in connection with his November 27, 2007, surgery related to his compensable injury. Moreover, the Workers' Compensation Board of Review order of March 5, 2008, in Case Number 35219, pertaining to Mr. Greathouse, also is hereby reversed and remanded for further factual development to determine whether Mr. Greathouse is entitled to receive the TTD benefits he has requested.

Case Number 35548–Reversed and Remanded.

Case Number 35219–Reversed and Remanded.