PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Stephenson, S.J.

TAMELA H. WEBB

OPINION BY
v.  Record No. 071008   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.

June 6, 2008

CHARLES WILLIAM SMITH, III, M.D.

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Pamela S. Baskervill, Judge

In this appeal, we determine whether, under the special facts and circumstances of this medical malpractice action, the plaintiff was required to present expert testimony on the issue of causation.

I

Tamela H. Webb filed an action against Charles William Smith, III, M.D., alleging medical malpractice by Dr. Smith for negligently performing surgery on her, which caused Webb to undergo a subsequent surgery and incur damages attendant thereto.  At the conclusion of Webb's case-in-chief and at the conclusion of all the evidence, Dr. Smith moved the court to strike Webb's evidence on the ground that Webb had not presented expert testimony on the issue of causation.  The trial court took the motions under advisement and submitted the case to the jury.

The jury returned its verdict in favor of Webb in the amount of $75,000, with interest on $25,520.06 from August 30,

2004, until paid. Following the verdict, the trial court considered Dr. Smith's motion to strike Webb's evidence. Upon the parties' post-trial briefs, the court sustained Dr. Smith's motion and entered judgment in his favor. We awarded Webb this appeal.

## II

For years, Webb had suffered pain associated with her menstrual cycle. She had been advised by her long-time physician that she "might need" to undergo a bilateral salpingo oophorectomy (BSO). Webb decided to undergo the BSO together with a hysterectomy, and she went to Dr. Smith for the surgery. Dr. Smith agreed to perform both procedures in a single surgery. Dr. Smith performed the hysterectomy, but he forgot to perform the BSO.

At trial, Webb presented an expert witness who testified about the relevant standard of care for a doctor engaged in Dr. Smith's field of practice. The expert witness also testified that Dr. Smith had breached the standard of care by agreeing and obtaining consent to perform the two procedures in one surgery, but failing to do so. The expert witness did not offer any testimony regarding causation.

Webb testified that, due to Dr. Smith's negligence in performing only one procedure, she had to undergo a second

surgery and endure a second round of trauma, associated pain and suffering, and mental anguish.

III

Webb contends that the verdict was improperly set aside because the present case presents one of the rare instances in which expert testimony was not necessary or appropriate. Webb asserts that "[n]o specialized training was necessary for a juror to understand that when [Dr.] Smith neglected to perform the surgery he had agreed to perform, [she] would necessarily have to find another physician to finish what [Dr.] Smith had started, but failed to finish." Webb testified that Dr. Smith told her he had forgotten to perform the second procedure. Webb asserts that, as with forgetting to remove a sponge or scalpel from a patient's body during surgery, her damages for Dr. Smith's forgetting to perform the second procedure "are evident to any normal person" and are the direct and proximate result of Dr. Smith's negligence. Therefore, Webb concludes, the jury did not need expert testimony to find, as it did, that she desired to have her ovaries removed, that Dr. Smith agreed to perform the procedure together with a hysterectomy, that Dr. Smith negligently failed to perform the procedure, and that Dr. Smith's negligence was the proximate cause of her having to undergo a second surgery.

3

Dr. Smith contends that Webb, because she brought a tort action for medical malpractice and not a breach-of-contract action, was required to establish the necessary elements of a medical malpractice action, which she failed to do.  Dr. Smith observes that, in medical malpractice actions, expert testimony is ordinarily required to establish the necessary elements, including causation, and he contends that the present case is no exception.

IV

We have said that, in medical malpractice cases, "expert testimony is ordinarily necessary to establish the appropriate standard of care, to establish a deviation from the standard, and to establish that such a deviation was the proximate cause of the claimed damages."  Raines v. Lutz, 231 Va. 110, 113, 341 S.E.2d 194, 196 (1986); accord Bly v. Rhoads, 216 Va. 645, 653, 222 S.E.2d 783, 789 (1976).  Exceptions to this rule exist only in "those rare cases in which a health care provider's act or omission is clearly negligent within the common knowledge of laymen."  Raines, 231 Va. at 113, n.2, 341 S.E.2d at 196, n.2; see, e.g., Coston v. Bio-Medical Applications of Va., Inc., 275 Va. 1, 5, 654 S.E.2d 560, 562 (2008) (plaintiff placed in defective chair by health care provider); Easterling v. Walton, 208 Va. 214, 218, 156 S.E.2d 787, 790-91 (1967) (foreign object left in patient's body by surgeon).

4

We conclude that the present case presents one of those "rare cases" in which expert testimony is not necessary to establish that Dr. Smith's deviation from the standard of care was the proximate cause of Webb's damages.  As a result of Dr. Smith's failure to perform the BSO, Webb had to undergo the second surgery and incur damages attendant thereto.  A reasonably intelligent juror did not need an expert to explain why Dr. Smith's negligence was the proximate cause of Webb's damages because the issue of causation was within the common knowledge of laymen.

IV

Accordingly, we will reverse the trial court's judgment, reinstate the jury's verdict, and enter judgment in favor of Webb.

<u>Reversed and final judgment</u>.

JUSTICE KINSER, with whom JUSTICE AGEE joins, dissenting.

The majority concludes that "[a]s a result of Dr. Smith's failure to perform the [bilateral salpingo oophorectomy (BSO)], Webb had to undergo the second surgery and incur damages attendant thereto."  Only testimony from a medical expert could have established that Webb "had" to undergo the second surgery. Therefore, I respectfully disagree with the majority opinion and conclude that the trial court did not err in setting aside the

5

jury verdict in favor of Webb because she failed to present medical expert testimony on the issue of proximate causation.

"In order to recover for medical negligence, the plaintiff ordinarily must prove through the use of expert testimony the applicable standard of care, a deviation from that standard, proximate causation, and damages." Rogers v. Marrow, 243 Va. 162, 167, 413 S.E.2d 344, 346 (1992) (emphasis added) (citing Raines v. Lutz, 231 Va. 110, 115, 341 S.E.2d 194, 197 (1986)). As the trial court recognized, the issue was whether Webb presented sufficient evidence to establish that Dr. Smith's breach of the standard of care proximately caused Webb's claimed damages. In holding that Webb did not present sufficient evidence of causation, the trial court concluded "that the need for a subsequent surgery is not within common knowledge of laymen and . . . that expert testimony is required to show causation." (Emphasis added.)

Before this Court, Webb casts her argument in terms suggesting that the two medical procedures she consented for Dr. Smith to perform were "elective." Her testimony, however, was stated in terms of necessity. Specifically, Webb testified, "I needed my ovaries and tubes out because they should have come out to begin with." However, Dr. Smith, in uncontradicted testimony, stated that, during the first surgery, he inspected Webb's "tubes and ovaries" and found them "to be normal with no

6

visible pathology, nothing to suggest that there was anything in the slightest wrong with them, nothing that would indicate that they ought to come out or that she would benefit from such." When asked if there was "any medical need" to remove Webb's "ovaries and tubes" during the first surgery, Dr. Smith responded, "No."

Dr. John R. Partridge, who testified as a medical expert on behalf of Dr. Smith, agreed that Dr. Smith's decision to not remove Webb's "tubes and ovaries" during the initial surgery was appropriate since "[t]he ovaries looked normal [and] there was really no reason to take them out." Dr. Partridge opined that apart from elective plastic surgery, it is not within the standard of care to perform a medical procedure that is not needed. Webb's medical expert witness, Dr. Ezell S. Autry, did not disagree with that opinion. Although Dr. Autry testified "that the standard of care was violated in respect that the patient had signed a permit for a procedure of vaginal hysterectomy, bilateral salpingo-oophorectomy and physician Dr. Smith did not do that," he nonetheless acknowledged that, even though a patient consents to a BSO as part of a total hysterectomy, it would be appropriate for the surgeon to not perform that procedure if the surgeon decided it was unnecessary.

7

The majority, nevertheless, reasons that the necessity of the second surgery was within the common knowledge of lay persons.  I disagree.  Only a medical expert witness could testify as to whether Webb needed to have the BSO during the first surgery and, whether as a result of Dr. Smith's failure to perform the BSO, it remained medically necessary for her to undergo that procedure, thereby requiring the second surgery.  Cf. Combs v. Norfolk & W. Ry. Co., 256 Va. 490, 496-97, 507 S.E.2d 355, 358-59 (1998) (holding that only a medical doctor is qualified to state an expert medical opinion regarding the causation of an injury to the human body).  Without such testimony, Webb could not establish that Dr. Smith's negligence in failing to perform the BSO during the first surgery was a proximate cause of the damages she claimed as a result of undergoing the second surgery.

The majority fails to recognize the distinction that the trial court correctly pointed out in its letter opinion, "[t]his cause of action is one for medical malpractice based on negligence, not breach of contract.  Yet, the thrust of plaintiff's evidence and arguments supports a theory of failed expectations."  See Filak v. George, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004) ("[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of

8

contracts." (citing Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988))).

Indeed, the testimony from Dr. Autry, Webb's only medical expert witness, supports the trial court's conclusion. As already noted, Dr. Autry based his opinion that Dr. Smith breached the standard of care solely on the basis that Dr. Smith, during the first surgery, did not perform a procedure that he had agreed to perform and that Webb had agreed to undergo by virtue of the consent form she signed. Yet, the majority concludes that Webb "had" to undergo the second surgery because Dr. Smith failed to perform the BSO during the first surgery. Whether Smith "had" to undergo the second surgery is a question of medical necessity requiring expert testimony from a physician.

For these reasons, I conclude that this is not one of those "rare cases" in which a plaintiff can prevail without medical expert testimony to establish the requisite element of proximate causation. Therefore, I respectfully dissent and would affirm the judgment of the trial court.