719 S.E.2d 714

**Jill WILLEY, Individually, and
Mike Willey, Plaintiffs,**

v.

**Samuel J. BRACKEN, Jr.,
M.D., Defendant.**

**No. 35519.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 22, 2010.

Decided Oct. 14, 2010.

David S. Givens, Phillip T. Glyptis, Flaherty Sensabaugh Bonasso, PLLC, Wheeling, WV, for Defendant.

David A. Jividen, Chad C. Groome, Jividen Law Offices, PLLC, Wheeling, WV, for Plaintiffs.

DAVIS, Chief Justice:

In this certified question action, this Court is asked to determine the application of the West Virginia borrowing statute, *i.e.*, W. Va. Code § 55–2A–2 (1959) (Repl.Vol.2008),[1] to a medical malpractice action where the initial

act of negligence occurred in a foreign jurisdiction, but further injuries related to that negligence occurred in West Virginia. We find that the borrowing statute has no application to the unique facts presented in this action.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In the action underlying this certified question, it has been alleged that Jill Willey (hereinafter referred to as "Mrs. Willey"), a resident of Wheeling, Ohio County, West Virginia, sought medical treatment from Dr. Samuel J. Bracken, Jr., a gynecologist who was engaged in the practice of medicine in the states of West Virginia and Ohio. On December 15, 2004, Dr. Bracken performed a laparoscopic tubal ligation on Mrs. Willey, on an outpatient basis, at East Ohio Regional Hospital in Martins Ferry, Ohio. Mrs. Willey returned to West Virginia, and, on December 19, 2004, as a result of severe abdominal pain, she sought treatment in the emergency room at Ohio Valley Medical Center, a facility that is located in West Virginia. She was originally thought to have a bowel obstruction and was sent home. However, her pain continued, and she returned to the Ohio Valley Medical Center Emergency Room in the early morning hours of December 20, 2004, when she received emergency surgery for a perforation of the sigmoid colon in the area in which the tubal ligation had been performed. According to the Willeys' complaint, the emergency surgery included a colostomy. She was later subjected to additional surgery to reverse the colostomy.

An expert witness retained by Mrs. Willey in connection with the instant litigation, Dr. Melvyn J. Ravitz, has indicated that certain methods used by Dr. Bracken in performing Mrs. Willey's laparoscopic tubal ligation resulted in some sort of insult that led to a *delayed* perforation. Likewise, Dr. Howard Shackelford, Jr., who performed the emer-

---

**1.** The text of this statute is set out below in the Discussion Section of this opinion. *See* Section III, *infra*.

gency surgery to repair the perforation of the sigmoid colon, testified by deposition to the possibility that, during the laparoscopic tubal ligation performed by Dr. Bracken, Mrs. Willey sustained a partial injury or cautery burn to her sigmoid colon that later perforated.

Mrs. Willey and her husband (hereinafter referred to as "the Willeys") initiated this action by serving on Dr. Bracken their "Notice of Claim" dated October 27, 2006, and a Screening Certificate of Merit authored by Dr. Ravitz and dated August 23, 2006. Thereafter, on December 14, 2006, the Willeys filed their complaint against Dr. Bracken alleging medical negligence. In their complaint, the Willeys aver that Dr. Bracken

was negligent toward [Mrs. Willey], in one or more of the following particulars:

a. failing to exercise a degree of care and skill ordinarily exercised by other physicians in like and similar conditions, thereby falling below the acceptable standard of care;

b. failing to possess the degree of knowledge ordinarily possessed by other physicians in like and similar circumstances, thereby falling below the acceptable standard of care;

c. perforating the sigmoid colon during the performance of a laparoscopic tubal ligation,

d. failing to recognize that he had perforated the colon. . . .

On May 18, 2009, Dr. Bracken submitted a "Revised Motion for Summary Judgment" in which he asserted that, pursuant to W. Va. Code § 55–2A–2, West Virginia's borrowing statute, the court was required to apply the statute of limitations of the State of Ohio, because Mrs. Willey's tubal ligation was performed in Ohio.[2] Following a hearing on June 26, 2009, the circuit court denied Dr. Bracken's motion. The circuit court concluded that the Willeys' cause of action accrued in West Virginia, based upon its finding that her injury occurred in West Virginia. Nev-

ertheless, the circuit court certified the following questions to this Court:

1. Does a cause of action for medical negligence "accrue", for the purposes of the West Virginia borrowing statute, W. Va.Code § 55–2A–2, in the State of West Virginia or the State of Ohio where the Defendant doctor is a West Virginia doctor, where the plaintiff is a West Virginia resident, where the doctor-patient relationship between the plaintiff-patient and defendant-doctor is established in the state of West Virginia, where the Defendant-doctor performs a tubal ligation in the state of Ohio, with no immediate injury, where the defendant-doctor chose the location for the tubal ligation procedure, where the tubal ligation is the only procedure which occurred in the state of Ohio in the course of the patient-doctor relationship between plaintiff and defendant, and where the plaintiff-patient suffers a sigmoid colon rupture in the State of West Virginia in the week following the tubal ligation procedure?

2. Does the West Virginia Borrowing statute, W. Va.Code § 55–2A–2[,] apply to a medical negligence claim where the Defendant, a West Virginia physician, admits that both the substantive and procedural law of the state of West Virginia applies [sic] to the plaintiff's claim?

3. As a matter of public policy, should the West Virginia borrowing statute be construed so as not to bar a claim for medical negligence by a West Virginia resident patient, where the defendant doctor is a West Virginia doctor, where the Plaintiff is a West Virginia resident, where the doctor-patient relationship between the plaintiff-patient and defendant-doctor is established in the State of West Virginia, where the defendant-doctor performs a tubal ligation in the state of Ohio with no immediate injury, where the defendant-doctor chose the location for the tubal

---

**2.** Ohio has a one year statute of limitations for medical malpractice actions. *See* Ohio Rev.Code Ann. § 2305.11.3(A) (2003) (Repl.Vol.2010) ("Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.").

ligation procedure, where the tubal ligation is the only procedure which occurred in the state of Ohio in the course of the patient-doctor relationship between Plaintiff and Defendant, and where the Plaintiff-patient suffers a sigmoid colon rupture in the state of West Virginia in the week following the tubal ligation procedure?

In its Certification Order, the circuit court expressly concluded that

the West Virginia Borrowing Statute, W. Va.Code § 55–2A–2, does not bar the Plaintiff's clams for medical negligence pursuant to the Ohio one-year statute of limitations as "the Plaintiff's cause of action did not accrue per the statute in the State of Ohio." Rather, this Court found that the Plaintiff's cause of action for medical negligence accrued in the state of West Virginia, "where the injury occurred."

By order entered March 30, 2010, this Court accepted the certified question for review.

## II.

### STANDARD OF REVIEW

■ It is well established that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). *Accord* Syl. pt. 1, *Robinson v. Pack*, 223 W.Va. 828, 679 S.E.2d 660 (2009); Syl. pt. 1, *Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.*, 220 W.Va. 39, 640 S.E.2d 102 (2006).

## III.

### DISCUSSION

Prior to addressing the issues raised in connection with the questions certified to this Court by the Circuit Court of Ohio County, we choose to exercise our authority to reformulate the questions presented. *See* Syl. pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993) ("When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power

to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va.Code*, 51–1A–1, *et seq.* and *W. Va.Code*, 58–5–2 [ (1998) (Repl. Vol.2005) ], the statute relating to certified questions from a circuit court of this State to this Court."). *Accord Potesta v. United States Fid. & Guar. Co.*, 202 W.Va. 308, 313 n. 9, 504 S.E.2d 135, 140 n. 9 (1998). *Cf.* W. Va.Code § 51–1A–4 (1996) (Repl.Vol.2008) ("The Supreme Court of Appeals of West Virginia may reformulate a question certified to it."). In order to fully and clearly address the legal issues presented in this action, we find it necessary to answer only one question. Accordingly, we reformulate the questions herein certified as follows:

When a surgical procedure is negligently performed in a foreign jurisdiction, and as a direct result of that negligence the plaintiff/patient must undergo a subsequent surgical procedure in West Virginia, does the West Virginia borrowing statute, W. Va.Code § 55–2A–2 (1959) (Repl.Vol.2008), apply?

■ The issue raised in the foregoing question requires that we examine the borrowing statute to determine whether it applies to the circumstances presently before the Court. Before engaging in our analysis, we observe that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). However, if a statute is plain, this Court lacks authority to construe its provisions, and we must, instead, apply its clear terms. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

The West Virginia borrowing statute states that "[t]he period of limitation applicable to a claim accruing outside of this State shall be either that prescribed by the law of the place where the claim accrued or by the law of this State, whichever bars the claim."

W. Va.Code § 55–2A–2.[3] This Court previously has recognized that *"W. Va.Code,* 55–2A–2, provides that where a claim accrues beyond state boundaries, the shorter limitation, West Virginia's or the foreign limitation, shall govern such action." *Oakley v. Wagner,* 189 W.Va. 337, 340, 431 S.E.2d 676, 679 (1993). We have further declared that "[t]he spirit of *W. Va.Code,* 55–2A–2 [1959] clearly favors the extinguishment of the claim." *Hayes v. Roberts & Schaefer Co.,* 192 W.Va. 368, 371, 452 S.E.2d 459, 462 (1994).

The parties to this action contend that the certified question may be resolved based upon the meaning of the term "accrue" as used in W. Va.Code § 55–2A–2. Dr. Bracken submits that, "[g]enerally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs...." Syl. pt. 3, *Stuyvesant v. Preston Cnty. Comm'n,* 223 W.Va. 619, 678 S.E.2d 872 (2009) (quoting Syl. pt. 1, *Cart v. Marcum,* 188 W.Va. 241, 423 S.E.2d 644 (1992), *overruled in part*

on other grounds by *Dunn v. Rockwell,* 225 W.Va. 43, 689 S.E.2d 255 (2009)). Therefore, he urges, this Court should find that the Willeys' claim accrued in Ohio, where her tubal ligation was performed.[4]

The Willeys, on the other hand, submit that Mrs. Willey's injury was sustained in West Virginia when her sigmoid colon actually perforated. The Willeys further contend that " '[a] cause of action accrues in the state where the final significant event essential to the bringing of a claim occurs....' " *Hayes v. Roberts & Schaefer Co.,* 192 W.Va. at 371, 452 S.E.2d at 462 (quoting *Rostron v. Marriott Hotels,* 677 F.Supp. 801, 802 (E.D.Pa. 1987)).[5] Relying on Syllabus point 4 of *Gaither v. City Hospital, Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997),[6] the Willeys argue that West Virginia courts treat the concept of "injury" as a separate and distinct event when applying the "discovery rule" to a statute of limitations in negligence cases, and the same rationale should be applied here.[7] Fur-

3. Providing some historical background related to the borrowing statute, the Court has explained that

[o]ur borrowing statute, which was adopted in 1959, is based on and is almost identical to the *"Uniform Statute of Limitation on Foreign Claims Act,"* which was approved by the uniform law committee in 1957. *See* W. Va.Code, 55–2A–5 [1959]. According to the Prefatory Note, for the *Uniform Conflict of Laws–Limitation Act,* 12 U.L.A. 156 (1996), the *Uniform Statute of Limitation on Foreign Claims Act* (the West Virginia borrowing statute) "achieved no general adoption, and was officially withdrawn in 1978" in part because of "its abrupt harshness."

*McKinney v. Fairchild Int'l, Inc.,* 199 W.Va. 718, 724–25, 487 S.E.2d 913, 919–20 (1997). Although the model act upon which our borrowing statute was based has been withdrawn, no amendments to the statute have been undertaken by our Legislature.

4. Dr. Bracken also relies, in part, on *Weethee v. Holzer Clinic, Inc.,* 200 W.Va. 417, 490 S.E.2d 19 (1997) (per curiam), a case where a West Virginia resident had a tubal ligation performed in Ohio and subsequently became pregnant. However, the *Weethee* opinion is not instructive to resolving the instant action insofar as the issue before the *Weethee* Court involved a determination of which jurisdiction's savings statute applied.

5. The Willeys' reliance on *Hayes v. Roberts & Schaefer Co.* is misplaced. The quote to which they refer was offered in the *Hayes* opinion only

as support for the proposition that, in the circumstances presented in *Hayes,* which involved a worker who sustained an injury from falling from a roof while working in Kentucky, "the claim accrued when and where the injury was sustained." *Hayes,* 192 W.Va. at 370, 452 S.E.2d at 461.

6. Syllabus point 4 of *Gaither v. City Hospital, Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997), states:

In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

7. There are no issues pertaining to the application of the discovery rule presented to us in this certified question action. Furthermore, this Court has previously held that

*W. Va.Code,* 55–2A–2 [1959] does not require the application of any tolling provisions from the place where the claim accrued when a claim accruing outside West Virginia is filed in this State. The determination of which state's tolling provisions should be applied is to be resolved under conflicts of laws provisions. Syl. pt. 4, *McKinney v. Fairchild Int'l, Inc.,* 199 W.Va. 718, 487 S.E.2d 913.

thermore, the Willeys contend that, because the instant case is a negligence action, all the essential elements of the claim had to exist before the action "accrued." *Atkinson v. Harman*, 151 W.Va. 1025, 1031, 158 S.E.2d 169, 173 (1967) ("These elements of duty, breach and injury are essential to actionable negligence and in the absence of any of them the action must fall.").

■ We are unpersuaded by the parties' arguments as to how the borrowing statute should be applied in the case *sub judice*. The Willeys' complaint alleges that Dr. Bracken was negligent toward Mrs. Willey by "perforating the sigmoid colon *during the performance of* a laparoscopic tubal ligation," and by "failing to recognize that he had perforated the colon." (Emphasis added). Thus, from the allegations in the complaint, it is clear that at least part of the cause of action accrued in the State of Ohio. If the complaint in this matter rested solely upon damages resulting from the injury caused in Ohio, this Court would not hesitate to find that the borrowing statute applies. *See* W. Va.Code § 55–7B–4 (1986) (Repl.Vol.2008) ("A cause of action for injury to a person alleging medical professional liability against a health care provider arises as of the date of injury."). *See also* Syl. pt. 1, *Jones v. Trustees of Bethany College*, 177 W.Va. 168, 351 S.E.2d 183 (1986) ("The statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues[,] which is when the injury is inflicted."). However, as will be shown, the complaint in this case also seeks relief for harm caused in the state of West Virginia. Ultimately, the unique facts of this case demand

that, as a matter of public policy, the mere fact that an injury occurred in another jurisdiction will not automatically invoke the borrowing statute where additional injury occurs in West Virginia.[8]

■ This Court has previously recognized that,

> " ' "[p]ublic policy" is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against public good even though no actual injury may have resulted therefrom in a particular case to the public.' " *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. at 325, 325 S.E.2d at 114 (quoting *Allen v. Commercial Cas. Ins. Co.*, 131 N.J.L. 475, 477–78, 37 A.2d 37, 39 (1944) (internal quotations and citations omitted)).

*Feliciano v. 7–Eleven, Inc.*, 210 W.Va. 740, 745, 559 S.E.2d 713, 718 (2001). Furthermore,

> [t]he sources determinative of public policy are, among others, our federal and state constitutions, our public statutes, our judicial decisions, the applicable principles of the common law, the acknowledged prevailing concepts of the federal and state governments relating to and affecting the safety, health, morals and general welfare of the people for whom government—with us—is factually established.

*Morris v. Consolidation Coal Co.*, 191 W.Va. 426, 433 n. 5, 446 S.E.2d 648, 655 n. 5 (1994) (quoting *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. at 325, 325 S.E.2d at 114) (additional citation omitted).[9] Finally, we

---

8. Dr. Bracken incorrectly asserts that this Court has previously determined, in *Hayes v. Roberts & Schaefer Co.*, 192 W.Va. 368, 452 S.E.2d 459, that the borrowing statute does not violate West Virginia public policy. The *Hayes* Court reversed a lower court ruling that included, *inter alia*, a finding that the borrowing act offended public policy. By doing so, the *Hayes* Court implicitly concluded that the borrowing act did not violate public policy as it applied to the facts presented in *Hayes*. However, the Court did not expressly address the issue.

9. This Court has also extended the following caution:

> In *Cordle* [*v. General Hugh Mercer Corp.*], 174 W.Va. at 325, 325 S.E.2d at 114, this

Court quoted approvingly the observation made in *Allen v. Commercial Casualty Ins. Co.*, 131 N.J.L. 475, 477–78, 37 A.2d 37, 38–39 (1944), that:

> Much has been written by text writers and by the courts as to the meaning of the phrase "public policy." All are agreed that its meaning is as "variable" as it is "vague," and that there is no absolute rule by which courts may determine what ... contravene[s] the public policy of the state....

We noted in *Yoho v. Triangle PWC, Inc.*, 175 W.Va. 556, 561, 336 S.E.2d 204, 209 (1985), that:

> The power to declare an action against public policy is a broad power and one difficult to define. "No fixed rule can be given to

note that "[a] determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." Syl. pt. 1, *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984).

 Considering the unique set of facts before us, we look to the Certain Remedy Clause of the West Virginia Constitution to determine the effect of public policy upon the application of the borrowing statute to the circumstances presented in the instant case. Pursuant to the Certain Remedy Clause, "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." W. Va. Const. Art. III, § 17. In other words, "when a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated." Syl. pt. 6, in part, *Gibson v. West Virginia Dep't of Highways*, 185 W.Va.

214, 406 S.E.2d 440 (1991). *See also* Syl. pt. 5, *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991) (setting out two-part analysis for determining if legislation implicates Certain Remedy Clause). Thus, the Certain Remedy Clause prevents application of a statute that improperly denies a citizen his or her right to seek redress in the courts of this State for injuries received in West Virginia. *See, e.g., Kyriazis v. University of West Virginia*, 192 W.Va. 60, 450 S.E.2d 649 (1994) (finding anticipatory release that served as absolute bar to injury claims by rugby player violated Certain Remedy Clause).[10]

The record in this case indicates that Mrs. Willey had to undergo corrective surgery in West Virginia as a direct result of the alleged negligence of Dr. Bracken. By virtue of the emergency surgeries to correct her ruptured sigmoid colon, Mrs. Willey was subjected to additional invasions of her body, which caused her to sustain pain, suffering, and economic loss in West Virginia that was directly caused by the alleged negligence of Dr. Bracken in Ohio.[11] *Cf. Bevins v. West Virginia Office of the Ins. Comm'r*, 227

determine what is public policy. (citations omitted). It is sometimes defined as that principle of law under which freedom of contract or private dealings are restricted by law for the good of the community—the public good." *Higgins v. McFarland*, 196 Va. 889, 894, 86 S.E.2d 168, 172 (1955). Nevertheless, despite the broad power vested in the courts to determine public policy, we must exercise restraint when we use it[:] The right of a court to declare what is or is not in accord with public policy does not extend to specific economic or social problems which are controversial in nature and capable of solution only as the result of a study of various factors and conditions. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community so declaring. *Mamlin v. Genoe*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).
*Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 141, 506 S.E.2d 578, 584 (1998).

**10.** Additional support indicating a public policy that favors West Virginia citizens having a remedy, in West Virginia, for their injuries may be found in our *forum non conveniens* statute, W. Va.Code § 56–1–1a (2008) (Supp.2010). The *forum non conveniens* statute allows an action to

proceed in a West Virginia court when the action would be barred by the statute of limitations in a foreign court, unless the defendant agrees to waive the right to assert the statute of limitations defense in the alternative forum.

**11.** Indeed, the Willeys' complaint actually seeks damages for the additional surgeries she endured in West Virginia:

7. Jill Willey experienced severe abdominal pain and sought treatment at the Emergency Room at Ohio Valley Medical Center on December 19, 2004, where she was originally thought to have bowel obstitation [sic]. Jill Willey later returned to the Emergency Room at Ohio Valley Medical Center in the early morning hours of December 20, 2004[,] and was taken to surgery emergently for a perforation of the sigmoid colon in the area that the tubal ligation was performed. Jill Willey underwent a colostomy and suffered severe peritonitis and septic shock requiring admission to the Intensive Care Unit at the Ohio Valley Medical Center. Jill Willey was critically ill and was on a ventilator with a Swan Ganz Catheter and required vasopressors and antibiotics.
. . . .
9. As a direct and proximate cause, Jill Willey suffered physical pain, scarring, injury to various parts of her body, mental and emotional anguish, embarrassment, and diminish-

W.Va. 315, 324, 708 S.E.2d 509, 518 (2010) ("all normal consequences from a compensable injury are, themselves, compensable.").

The public policy issue we herein discuss is illustrated by the Supreme Court of Virginia in the case of *Webb v. Smith,* 276 Va. 305, 661 S.E.2d 457 (2008). In *Webb,* the plaintiff's doctor had agreed to perform two procedures on the plaintiff in a single surgery.[12] The physician performed one procedure as planned, but forgot to perform the other.[13] As a result, the plaintiff subsequently had to "undergo a second surgery and endure a second round of trauma, associated pain and suffering, and mental anguish." *Webb,* 276 Va. at 307, 661 S.E.2d at 458. The plaintiff was allowed to recover damages for the second surgery that was required as a direct result of negligence during a first surgery. *See also Martin v. Rosomoff,* 370 So.2d 1228, 1229–30 (Fla.App.1979) (permitting plaintiff to recover damages for subsequent surgeries required as result of negligence in first surgery, and commenting that "the negligent act of leaving the clip in plaintiff's back clearly and undoubtedly necessitated the subsequent surgical procedures to remove the clip.... [I]ts presence necessitated the plaintiff-wife to undergo two additional surgical procedures, the cost for which the plaintiff-husband became responsible. Thus, the defendant's negligence was the unequivocal proximate cause of some damage to the plaintiffs."); *Edenfield v. Vahid,* 621 So.2d 1192 (La.Ct.App.1993) (same); *Bauer v. White,* 95 Wash.App. 663, 669, 976 P.2d 664, 668 (1999) (same, and commenting that, "[u]nder these circumstances, the physician's negligence is the 'unequivocal proximate cause of some damage,' *including the additional surgical procedure*" (quoting *Martin v. Rosomoff,* 370 So.2d at 1229–30) (emphasis added)).

We are cognizant that, in the *Webb* case discussed above, the plaintiff sued only for her second injury. Presumably, in the instant case, the Willeys could have maintained a cause of action solely for the subsequent surgeries Mrs. Willey underwent in West Virginia. However, the Willeys exercised their right to seek damages for *all* of the injuries directly caused by Dr. Bracken, and the public policy of this State demands that they be allowed to seek full redress, not partial redress, in a West Virginia court. Consequently, we now hold that, when a cause of action is filed in a West Virginia court seeking damages for a surgical procedure that was negligently performed in a foreign jurisdiction, along with damages for a subsequent surgical procedure performed in West Virginia as a direct result of the negligence in the foreign jurisdiction, public policy demands that the applicable West Virginia statute of limitations applies to the negligence committed in the foreign jurisdiction. Under these unique circumstances, the West Virginia borrowing statute, W. Va.Code § 55–2A–2 (1959) (Repl.Vol.2008), has no application.[14]

We have not reached this result lightly. We fully recognize the Legislature's intent in enacting W. Va.Code § 55–2A–2, and in bright-line fact patterns the borrowing statute can achieve its purpose. However, to apply the borrowing statute to the unique facts of this case would deny the Willey's their constitutional right to full redress for their injuries. This Court has repeatedly acknowledged its "duty to 'avoid whenever possible [an application] of a statute which

___

ment in her ability to fully function, enjoy life and earn a living.

. . . .

11. Because of the negligence of Samuel J. Bracken Jr., M.D., that caused the sigmoid colon perforation, Jill Willey after recovery from the initial colon surgery and critical condition, had to undergo further surgery to reverse her colostomy.

12. The plaintiff was to undergo a bilateral salpingo oophorectomy along with a hysterectomy.

13. The doctor forgot to perform the bilateral salpingo oophorectomy.

14. Although the case is not on point, we do note that at least one other state with a borrowing statute identical to our own has declined to apply the same, even though the literal reading of the statute warranted its application, under circumstances different from those the statute was intended to address. *See Wilson v. Eubanks,* 36 Mich.App. 287, 290–91, 193 N.W.2d 353, 355 (1971) ("Borrowing statutes were enacted to prevent forum shopping and to avoid interminable tolling of the statutes of limitations where the defendant is a nonresident. Here, although read literally the words of the uniform act do apply, the public policy which engendered borrowing statutes does not." (footnote omitted)).

leads to absurd, inconsistent, unjust or unreasonable results.' *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990)." *Peters v. Rivers Edge Min., Inc.,* 224 W.Va. 160, 176, 680 S.E.2d 791, 807 (2009). If this court applied W. Va.Code § 55–2A–2 to the facts of this case, it would cause both an absurd and an unjust result.

## IV.

### CONCLUSION

After considering the certified question from the Circuit Court of Ohio County, as reformulated, we respond as follows:

When a surgical procedure is negligently performed in a foreign jurisdiction, and as a direct result of that negligence the plaintiff/patient must undergo a subsequent surgical procedure in West Virginia, does the West Virginia borrowing statute, W. Va.Code § 55–2A–2, apply?

Answer: No.

Having answered the foregoing certified question, as reformulated, we remand this matter to the Circuit Court of Ohio County for further proceedings consistent with this opinion.

Certified Question Answered.